HARRY LEE MARTIN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 68987.   Promulgated October 30, 1935.

*Dan J. Chapin, Esq.*, for the petitioner.
*Ralph Smith, Esq.*, for the respondent.

### OPINION.

ARUNDELL: The respondent determined a deficiency in petitioner's income tax for the year 1929 in the amount of $21,541.47. The petitioner alleges error in the respondent's disallowance of a claimed loss of $148,621.35 on the sale of two blocks of corporate stocks. The transaction resulting in the alleged loss was a transfer of the stocks by petitioner to his wife under the circumstances hereinafter set forth.

The petitioner, a resident of California, and Daisy E. Martin were married in 1901. For some eight or ten years prior to her marriage and for a year or two thereafter Mrs. Martin was employed by her father. She also took upon herself considerable of the responsibility of managing her father's household and continued to do so during her father's life. There were times when she drew no salary for the services rendered in her father's business.

In 1903 the petitioner expressed to his wife a desire to participate in a syndicate being formed for the purpose of purchasing a tract of land. He did not have the funds necessary to participate. He also conferred with his father-in-law, informing him of the possibilities of the venture. Shortly thereafter the father purchased for himself an interest in the venture and gave the petitioner's wife $5,000, which sum she turned over to the petitioner and he used it to purchase an interest.

In 1907 the petitioner was engaged in operating a mine. As bills were rendered for the mining operations they were paid by the petitioner's father-in-law. Such payments were regarded as advances to the petitioner's wife and in turn as advances by the wife to the petitioner. The total of such payments amounted to $26,000.

In 1923 the petitioner for the first time opened a set of accounts. In those accounts he made ledger entries showing an indebtedness to D. E. Martin, his wife, of $26,000 plus interest from July 1, 1907, and $5,000 plus interest from January 1, 1903.

The petitioner has never paid to his wife any sums to apply against the amounts advanced by the wife or any interest thereon. In 1912 the petitioner's net worth was about $100,000, in 1923 it was between $200,000 and $225,000, and at the beginning of 1929 it was $300,000 or $400,000. He paid interest to others in amounts ranging upward from $6,200 in 1924 to $29,121.99 in 1928, and $12,331.43 in 1929.

In 1927 and 1928 the petitioner acquired 786,000 shares of Argentina Consolidated Mining Co. stock at a cost of $131,355.10. In September 1929 he acquired 850 shares of General Theatre Equipment stock at a cost of $54,236.25.

On November 13, 1929, the petitioner, after consultation with his wife, transferred to her all his Argentina and General Theatre shares. On that date he entered in the ledger account in the name of his wife the then market value of the shares transferred, those values being $15,720 for the Argentina and $21,250 for the General Theatre shares. In his income tax return for 1929 he reported the transfers as being sales resulting in a loss of $115,635.10 on the Argentina shares and a loss of $32,986.25 on the General Theatre shares. These claimed losses offset partially gains on other transactions in stocks. One half of the net gain, as computed by petitioner, was reported in his return and one half in the return of his wife.

Counsel for the parties both state the question in this case to be whether or not the sale by petitioner to his wife of the Argentina and General Theatre stock was a bona fide sale. The respondent has determined that it was not.

There is no question of the sufficiency of the transfer in 1929. The Argentina certificates were delivered, and there was delivery of an assignment or bill of sale of the General Theatre stock which was then on deposit as collateral to secure a loan. These evidences of ownership have since remained in the possession of petitioner's wife.

It does not follow, however, that the transfer was a sale. A sale needs the support of a consideration—a price. No doubt the cancellation of a debt may constitute a valid consideration; and this brings us to the real question here, namely, whether there was a debt owing by petitioner to his wife. The term debt denotes an obligation of the debtor to pay and a right of the creditor to receive and enforce payment. *J. S. Cullinan*, 19 B. T. A. 930; *Twin Ports Bridge Co.*, 27 B. T. A. 346, 355. The transactions in this case, particularly when viewed in the light of the relation and conduct of the parties, do not impress us as imposing any obligation on the part of the petitioner to pay or establishing any right of the wife to enforce payment. The original transaction was in 1903. Twenty years elapsed before the petitioner made any written record

of it. The next advance was in 1907 and sixteen years passed without a record of it. There is no evidence of any recognition of a debt before that except the very general testimony of petitioner and his wife that the advances were regarded as loans and that the petitioner would repay them (in his words) " as soon as I was able ", with interest which according to the wife's testimony " would be paid at some time." After making a record of the advances six more years elapsed before there was any gesture toward satisfaction of any part of the account. In the meantime petitioner's net worth had become a substantial sum and was increasing with the passing of the years; he paid substantial amounts of interest to others. These facts do not accord with his testimony that he regarded the advances as debts to be paid as soon as he was able.

Upon consideration of all the evidence we are not convinced that there was a debt owing by petitioner to his wife. Consequently there was no consideration for the transfer of the stock in 1929 and the transfer was not a sale and no deductible loss was sustained thereby.

*Decision will be entered for the respondent.*