Estate of Katharine P. Loring, Deceased, Augustus P. Loring, Jr., and Caleb Loring, Executors, v. Commissioner.
Estate of Loring v. Commissioner
Docket No. 1321.
United States Tax Court
1944 Tax Ct. Memo LEXIS 181; 3 T.C.M. (CCH) 705; T.C.M. (RIA) 44230; July 18, 1944
*181 Earle W. Carr, Esq., and Francis R. Hines, Esq., Shawmut Bank Bldg., Boston, Mass., for the petitioners. James T. Haslam, Esq., for the respondent. MELLOTT
Memorandum Findings of Fact and Opinion MELLOTT, Judge: This proceeding involves the income tax liability of Katharine P. Loring for the calendar year 1939 in the amount of $1,456.15 She died after the petition was filed and the executors of her estate have been substituted as petitioners. The sole issue is whether the sum of $11,403.50, received by the decedent under the circumstances hereinafter set out, constituted a loan or, as respondent determined, is includible in gross income. The facts are found to be as stipulated. Other findings are based upon the testimony. Findings of Fact Katharine P. Loring was born May 21, 1849, and died August 16, 1943. Augustus P. Loring. Jr., and Caleb Loring are the duly appointed executors of her estate. Her return for the calendar year 1939 was filed with the collector of internal revenue for the district of Massachusetts. Katharine P. Loring and Louisa P. Loring (hereinafter referred to as Katharine and Louisa) were sisters. Louisa died May 14, 1924, testate, and her will, copy of which *182 is attached to the stipulation, was duly proved and allowed in the Probate Court of Essex County, Massachusetts. Katharine and Louisa had lived together in the old family home. It was desirable that their joint income be available to maintain it. They had therefore mutually agreed that each would leave to the other, by will, a life interest in the residue of her personal property. Wills effectuating this agreement had been drawn but remained in the custody of the respective parties. Subsequently Louisa redrafted her will for the purpose of including a nephew and, in copying the earlier will, failed to include the clause giving Katharine a life interest in her personal property as agreed. After the death of Louisa, but prior to proof and allowance of her will, a compromise agreement was entered into between Katharine and all the other heirs and next of kin of Louisa, copy of which is attached to the stipulation. It recited most of the facts set out in the preceding paragraph of these findings, stated that Katharine was claiming she was "entitled to a life interest in said residue upon a fair construction of the will of Louisa * * * and also by virtue of the agreement aforesaid", and *183 stated that the parties had "agreed to adjust and compromise in the manner hereinafter set forth." The paragraphs of the document showing the agreement are: "1. The residue of the estate of Louisa P. Loring shall be held in trust by the executors of her will during the life of Katharine Peabody Loring and they shall pay Katharine Peabody Loring at convenient intervals the net income of said residue so long as she shall live and upon her death shall carry out the directions contained in said will with respect to said residue. "2. Katharine Peabody Loring agrees to repay to said executors at the time of her death a sum equivalent to the aggregate of all sums paid to her by them during her life on account of the income of said residue and she hereby binds her executors or administrators to the performance of this obligation; and the sum paid in performance of this obligation shall constitute a part of the residue of the estate of Louisa P. Loring and be disposed of therewith. But this agreement does not impose upon Katharine Peabody Loring the duty of keeping the principal of her own property intact or refraining from using or disposing of it during her lifetime as she may see fit. *184 "3. The parties of the third part and the parties of the fourth part hereby relinquish any claim which they might have to any part of the income of the residue of the estate of Louisa P. Loring accruing during the lifetime of Katharine Peabody Loring." On petition of the executors of Louisa's estate the Probate Court of Essex County, Massachusetts, on July 17, 1924, authorized them "to adjust said controversies in accordance with the terms of said compromise agreement." At the date of death of Louisa the residue of personal property held by the executors of her estate had a value of $229,631.79. "During the life of the compromise agreement the executors under the will of Louisa * * * reported each year the net income on the residue of personal property held in trust by them and paid the tax thereon. All such net income was paid each year to Katharine * * *." The total amount so received by Katharine to the date of her death was $234,600.74. "During the period from November 19 to November 26, 1943 the petitioners paid to the executors under the will of Louisa * * * cash and securities having a total value of $234,600.74." Listed among the assets of the estate of Louisa, in the *185 annual accounts prepared by the executors and filed in the Probate Court, is an item representing the aggregate of amounts which had been paid, to the date of each account, to Katharine under the compromise agreement. "At all times during the life of the compromise agreement Katharine * * * owned property of a value equal to the aggregate of the the amounts theretofore received by her from the executors under the will of Louisa * * * under the terms of the compromise agreement." The net income received by the executors in 1939 on the residue of personal property held under the will of Louisa was $11,403.50, all of which was paid to Katharine under the compromise agreement. No portion of it was reported by Katharine in her Federal income tax return for that year. The executors under the will of Louisa "reported the said amount of $11,403.50 in their Federal income tax return for the year 1939 and paid a tax thereon of $723.09." The Commissioner added $11,403.50 to the net income shown by Katharine's return for 1939 and determined the deficiency now in issue. Opinion As indicated at the outset, the issue is whether the amount received by Katharine in 1939 was a loan, as she treated *186 it, or constituted taxable income to her. Respondent is not claiming it is taxable to her under section 161, I.R.C. He relies solely upon section 22 (a). The latter section requires the inclusion in gross income of "gains, profits and income * * * of whatever kind and in whatever form paid * * *." The compromise agreement obligated Katharine "to repay to * * * [the executors of Louisa's estate] at the time of her [Katharine's] death a sum equivalent to the aggregate of all sums paid to her by them during her life on account of the income of" the residuary estate of her sister. She bound "her executors or administrators to the performance of this obligation" and prompt fulfillment of it was made. Thus it is apparent that all the interested parties, including the executors of the two estates and the Probate Court having supervision over them, construed the agreement as one providing for yearly loans to Katharine, without interest, of all of the income of Louisa's estate, with the correlative obligation to repay the entire amount out of her estate. Respondent determined the deficiency upon the theory and now urges that payments under the agreement cannot be construed to constitute *187 loans. He says: "What really occurred and what was intended was that Katharine should receive the income of Louisa's residuary estate to enable her to maintain the old family place and, at her death, should leave her estate, other than pecuniary legacies, to the Executors of Louisa's estate." Whether the result suggested may eventuate cannot be ascertained on the present record. However that may be, we think it is immaterial. No such agreement was made. The contract simply provided for the repayment of the exact amount paid over to Katharine during her life. Apparently that is all that has been repaid. Moreover, by Katharine's will, she directed that "the sum due" under the compromise agreement - no more and no less - be paid to the executors of Louisa's estate while "the rest and residue" is given in equal shares "to the children of Augustus P. Loring, Junior, Caleb Loring and Ellen Loring Vaughan, deceased." One other circumstance relied upon by the respondent to support his determination is the concluding sentence of paragraph 2 of the agreement set out in our findings. It provides that the agreement [to repay]" does not impose upon Katharine * * * the duty of keeping the principal *188 of her own property intact or refraining from using or disposing of it during her lifetime as she may see fit." In this connection respondent "suggests that a promise to repay, coupled with a provision granting to the debtor the means to defeat repayment, has none of the characteristics of a loan." No authorities are cited in support of this view and without pausing to ascertain whether it has ever been approved by any court we think it is wrong. We agree with petitioners that "borrowers are not ordinarily required to keep their principal intact;" and the mere fact that the agreement recognized that Katharine had no such obligation cannot be construed to make her agreed repayment "conditional." Respondent also urges that " solution of the question may be derived from consideration of the situation which would have existed in the event that Louisa's will had made provision for a life estate to Katharine in conformity with their mutual agreement." In that event the income would have been taxable to Katharine, as received, under the provisions of section 161 and 162 I.R.C. and the various revenue acts. But that is likewise immaterial. No such provision was made. Perhaps the agreement *189 was an acceptable substitute; but that is no justification for holding that the rights of the parties under it were the same as they would have been if the contemplated arrangement had been carried out. The parties cite several cases in which the issue decided was whether an amount paid or received constituted interest. In each the principle was applied that there must be an indebtedness giving rise to the interest charge, "indebtedness", as used in the revenue acts, implying an unconditional obligation to pay. See Section 26.04, Vol. 4, Merten's Law of Federal Income Taxation and cases cited. What constitutes an unconditional obligation is largely a question of law to be determined upon the facts. The obligation must be personal, i.e., the liability must be that of the payor and he may not be a mere volunteer. A contingent or inchoate claim is not an unconditional obligation, at least until the contingency occurs. The payment to be made must not be a contribution to capital. A gift or a promise to make a gift will not ordinarily be construed to be a loan nor will delay in carrying it out require payment of interest, as such term is used in the revenue acts. An obligation to make *190 payment is no less binding because it is unsecured; and it still remains a personal obligation, absent any agreement to the contrary, even though amply secured by mortgage or collateral. Cases applying one or more of the above principles are legion, of which the following are illustrative: W. S. Gilman, 18 B.T.A. 1277, affirmed Gilman v. Commissioner, 53 Fed. (2d) 47; Hamlen v. Welch, 116 Fed. (2d) 413; Harry Lee Martin, 33 B.T.A. 340; Birdsboro Steel Foundry & Machine Co. v. United States, 78 Ct. Cls. 100, 3 Fed. Supp. 640. Although for the most part they involve the inclusion or the deduction of interest, they are persuasive. Discussion contained in cases in which contention has been made that preferred or debenture stock was actually evidence of an indebtedness and the so-called dividends were interest may also be apposite. Helvering v. Richmond, Fredericksburg and Potomac R.R. Co., 90 Fed. (2d) 971; Pacific Southwest Realty Co. v. Commissioner, 128 Fed. (2d) 815; *191 United States v. Title Guarantee & Trust Co., 133 Fed. (2d) 990. Moreover, when the present facts are contrasted with those before the courts in Lederer v. Stockton, 260 U.S. 3, and Boston Elevated Railway Co. v. Commissioner, 131 Fed. (2d) 161, certiorari denied 318 U.S. 760, additional support for the view which we now express - that the payment in issue was a loan - will be found. We are of the opinion and now hold that the Commissioner erred in including the amount in issue in the decedent's gross income. Uncontested adjustments require recomputation of the deficiency. Decision will be entered under Rule 50.