W. S. GILMAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 22659. Promulgated February 21, 1930.

*K. S. Finlayson, Esq.*, for the petitioner.
*A. H. Murray, Esq.*, for the respondent.

OPINION.

LANSDON: The parties have stipulated that the profit realized from the petitioner's sale of certain property in the year 1922 was $2,500 instead of $5,000, and that the profit realized from the sale of certain property in 1923 was $15,000, instead of $11,488.71, as asserted by the respondent in the deficiency notice. Effect of this stipulation should be reflected in the recomputation under Rule 50 of any tax liability for such year.

The single issue submitted to the Board is whether certain payments by the petitioner to his wife and children in each of the taxable years, in the circumstances set forth in our findings of fact, are deductible from gross income under the provisions of section 214 (a) (2) of the Revenue Act of 1921, which is as follows:

(a) That in computing net income there shall be allowed as deductions:

*   *   *   *   *   *   *

(2) All interest paid or accrued within the taxable year on indebtedness, except on indebtedness incurred or continued to purchase or carry obligations or securities (other than obligations of the United States issued after September 24, 1917, and originally subscribed for by the taxpayer) the interest upon which is wholly exempt from taxation under this title.

The petitioner contends that the effect of the assignment by gift of certain interests in the twelve contracts for the sale of land was to pass absolute title to such property to the petitioner's wife for herself and as trustee for the three children in the year 1919. If this is true, he argues that it follows that the notes given in 1920 were for consideration equal to the value of the interests reacquired by his wife's surrender and their mutual agreement to cancel the assignments.

It is obvious that we must first consider and determine whether the assignments here involved transferred the title of income-producing property from the petitioner to his wife in such fashion that she became the legal owner of both property and income and the beneficial owner of one-half thereof, or whether such assignments effected nothing more than an executory allocation of a part of petitioner's income to his wife and children without in any material way affecting title to the principal of the income-producing property.

It is unfortunate that the written assignments were lost or destroyed before the date of the hearing and that we must rely on the oral testimony of witnesses to determine the purpose and the effect

thereof. In the absence of any writings fixing terms or obligations, the Board must consider the oral evidence for the purpose of determining the intention of the parties and the purpose and effect of the missing writings. Petitioner contends that he intended to convey all his interest in the principal amounts described in the assignments, including a proportionate interest in the mortgages which he held as security for the payments due from the purchasers of the lands, or, in other words, that he gave his wife all his interest in certain payments of principal to be made to him as set forth in the contracts and that such gift carried to the wife the right to receive interest on such amounts as it became due and was paid.

In the single year in which assignments were effective the wife received $14,400, which is equal to 6 per cent interest on the principal amounts alleged to have been conveyed to her. The purchasers of the lands made no payments on account of principal in that year, nor is there any evidence that interest in such amount was paid by them. Petitioner testified that he felt prosperous in 1918 and that his purpose was to provide an income for his wife and children. The evidence indicates that this provision, if possible, was to be from interest paid by purchasers of the lands. Regardless of receipts from interest he deposited $1,200 a month to the credit of his wife and children. The annual payments under the assignments were exactly equal to the interest due annually on the principal amounts assigned. In these circumstances we conclude that it was the petitioner's intention to give his wife and children the interest and retain for himself the principal of the payments alleged to have been assigned. That the petitioner retained the legal title to the contracts and the mortgages taken in security confirms us in this conclusion. From these facts we think it follows, that the assignments merely purported to effect the transfer of a part of the petitioner's income without in any way affecting the ownership of the property from which such income flowed.

The status created by the assignments was not changed in any way when such instruments were canceled in 1920, and the instruments here in question were substituted therefor. Petitioner, of course, contends that such instruments were given for the purpose of reacquiring the assigned principal payments by purchase. As we have concluded that the evidence fails to show that the principal amounts were ever assigned to the wife, it follows that the instruments were not given to reacquire such property by purchase or for any other valuable consideration. This being true, they were no more than promises to make gifts in the future. *Williams* v. *Forbes*, 114 Ill. 167; 28 N. E. 463; *Wisler* v. *Tomb*, 169 Cal. 382; 146 Pac. 876. " The promise to pay interest was made concurrently with the

promise to pay the principal sum and is nothing more than a promise to make a future gift." *Simon Benson*, 9 B. T. A. 279.

We believe that the conclusion recited above determines the issue here, but it is also interesting and may be important to consider the terms of the instruments through which the petitioner alleges that he created an indebtedness which he is bound to discharge both as to principal and interest. Webster and Bouvier define " indebtedness " as " the state of owing something either in money or property that one is bound to pay." It is also held that certainty of payment must not depend on any contingency and that a debt proper creates vested rights that survive the parties. In 17 Corpus Juris, at page 1377, it is said that " Every debt must be either *solvendum in praesenti* or *solvendum in futuro*, must be certainly and in all events payable; whenever it is uncertain whether anything will ever be demandable by virtue of the contract, it cannot be called a debt." The courts distinguish between obligations that create a debt and those which are indefinite of fulfillment. On this point, it has been held that, "A debt is understood to be an unconditional promise to pay a fixed sum, at some specific time, and is quite different from a contract to be performed in the future, depending upon a condition precedent which may never be performed." *Saleno* v. *City of Neosho*, 127 Mo. 627; 30 S. W. 129; *Trask* v. *Livingston County*, 210 Mo. 582; 109 S. W. 656. The courts also hold to the same effect in *French* v. *City of Burlington*, 42 Iowa 614; *Burnham* v. *City of Milwaukee*, 73 N. W. 1018; and *Bolden* v. *Jensen*, 69 Fed. 745. In the last cited case, the learned Judge said: " The legal definition of the word [debt] is opposite to unliquidated damages on a liability in the sense of an inchoate or contingent debt, or an obligation not enforceable by ordinary process." In *Emil Weitzner*, 12 B. T. A. 724, this Board held that " when there is no obligation to pay there is no debt."

Clearly it was not intended that these instruments should be commercial paper. By their terms they are payable only to the payee and are not assignable for any purpose. They are not promissory notes within the provision of the negotiable instruments act of Iowa, since their ultimate collectibility as obligations to pay may be destroyed by the death of the payee and payment, therefore, is not unconditional as prescribed by sections 9461 (1) (2) and 9464 (4) 3 and 9465 of chapter 424 of the Iowa code.

Since these instruments are neither promissory notes nor any other form of negotiable paper under the laws of Iowa, and each contains a provision that in case of the death of the payee it was to be void, it is clear that as to the principal amounts they can be regarded only as executory promises to pay under condition that may never obtain. The annual payments made by the petitioner, though styled interest

and determined by reference to the face of each instrument, in our opinion, were several and separate promises which became debts, if at all, as and when due. All the evidence and the circumstances indicate, however, that the so-called notes were no more than mere formal engagements to make gifts in the future. A promise to make a gift is not enforceable at law. But even if such a promised gift is carried out the tax liability of the donor, who first received the amount as income, is not affected. In *Bing* v. *Bowers*, 22 Fed. (2d) 450, the court said:

To permit the assignor of future income from his own property to escape taxation thereon by a gift grant in advance of the receipt by him of such income would by indirection enlarge the limited class of deductions established by statute. As long as he remains the owner of the property, the income therefrom should be taxable to him as fully, when he grants it as a gift in advance of its receipt, as it clearly is despite a gift thereof immediately after its receipt.

In the light of the evidence and of the authorities cited we are of the opinion that neither the payments under the assignments nor the payments of alleged interest in the taxable years were anything more than mere attempts to assign future income, all of which in due course was received by and taxable to the petitioner. *Bing* v. *Bowers, supra, Louis Cohen*, 5 B. T. A. 171; *Ella D. King, Executrix*, 10 B. T. A. 698; *Charles Colbert*, 12 B. T. A. 565. Cf. *O'Malley-Keyes* v. *Eaton*, 24 Fed. (2d) 436; *William I. Paulson et al.*, 10 B. T. A. 732; *J. V. Leydig*, 15 B. T. A. 124. On this issue the determination of the Commissioner is approved.

After the hearing the respondent, through his counsel, moved to amend his answer by adding thereto an affirmative allegation of fraud. This motion was taken under advisement and after due consideration is hereby denied. Under the law the respondent has the burden of proof to sustain an allegation of fraud. We think the petitioner must be put on notice that such a charge is to be made and permitted to prepare his defense thereto in advance of hearing.

*Decision will be entered under Rule 50.*