### GILMAN v. COMMISSIONER OF INTERNAL REVENUE.

No. 8998.

Circuit Court of Appeals, Eighth Circuit.

Oct. 14, 1931.

Kenneth S. Finlayson, of Omaha, Neb. (Edward R. Burke and Finlayson, Burke & McKie, all of Omaha, Neb., on the brief), for petitioner.

William Cutler Thompson, Sp. Asst. to Atty. Gen. (G. A. Youngquist, Asst. Atty. Gen., Sewall Key and J. P. Jackson, Sp. Assts. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and De Witt M. Evans, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for respondent.

Before KENYON and VAN VALKEN-BURGH, Circuit Judges, and DAVIS, District Judge.

DAVIS, District Judge.

This case is brought here by a petition to review a decision of the Board of Tax Appeals finding additional income and profit taxes due from petitioner for each of the years of 1922 and 1923. The assessment of the additional tax resulted from the disallowance of deductions of $14,400 claimed to have been payments of interest in each of those years.

The petitioner is a resident of the city of Sioux City, in the state of Iowa. In the year 1918, he purchased a considerable area of farm lands in Iowa and Nebraska, from two large eastern estates, for a consideration in excess of $1,000,000, paid thereon about $150,000, and gave back mortgages for the remainder of the purchase price. In the year 1919, he resold a large part of the lands so purchased, receiving certain cash payments from each of the vendees and notes secured by mortgages for the unpaid balances. Each such sale was based on and evidenced by a written contract specifying the cash payment, the amounts and due dates of the deferred payments, and the amounts and due dates of interest accruing thereon.

In December, 1919, the petitioner made a written assignment to his wife relating to certain payments provided for in each of twelve of the sales contracts above described. The principal amounts of the payments designated in such assignments aggregated $240,000. Each of the twelve assignments so made specified certain of the principal payments of each of the sales contracts. One of the assignments, typical of all, related to petitioner's contract to sell 320 acres of land in Lynn county, Iowa, to Chauncey W. Pitts, for a total consideration of $72,000. That contract provided for a down payment of $7,200, for five annual payments of $3,600 each, and for a final payment of $46,800. As part of the purchase price paid for the land in 1918, the petitioner had assumed a mortgage in the amount of $18,000. Of the deferred payments provided in this contract, the petitioner's assignment involved the amount of $46,800. The twelve assignments were delivered to the petitioner's wife, together with copies of the contracts, and were kept by her in her own safety deposit box at a bank.

The written assignments in each instance were made to the petitioner's wife with the understanding that one-half the total value thereof was for her personal use and that she was to hold the remainder for the benefit, in equal shares, of the three children of petitioner and his wife. In the year 1919, petitioner's wife received the amount of $14,400 on account of such assignment, of which she retained $7,200 for her own use and paid over $7,200 in equal shares to each of the three children. None of the amounts so received by the petitioner's wife represented principal payments under the contracts in which an interest was assigned to her, and, if derived from collections on such contracts, all were first received by petitioner, entered on his books as credits to his wife, and thereafter deposited in her bank account, where it was subject to her check.

In the year 1920, the economic situation of agriculture in the Middle West became quite unsatisfactory to farmers and the owners of farm land. The prices of grain, live stock, and other farm products declined very materially, and the market values and salability of farm lands were greatly reduced as a result thereof. In this situation many of the purchasers of the lands sold by Gilman in 1919 were unable to meet their contractual obligations. In this situation, with a double set of mortgages, one running in favor of the petitioner and the other against him, he thought it best to reassume all the interest in the sales contracts that he had relinquished by assignment to his wife. On December 31, 1920, the petitioner's wife returned the assignments to him, and on that date he made four 30-year notes to his wife and their children in the respective amounts of $144,000, $48,000, $48,000, and $48,000, with interest payable annually at the rate of 5 per cent. All such notes, except as to payees and amounts, in words and figures were as follows:

"Promissory Note.

"On or before thirty years after date, for value received, I promise to pay to the order of Marjorie King Gilman, One Hundred Forty-four Thousand and 00/100 Dollars ($144,000), with interest at Five (5%) per cent per annum, payable annually from date.

"This note is given in exchange for certain securities which I turned over to the payee and which have now been returned to me.

"This note is payable only to the payee, is not assignable or transferable, is non-negotiable, and may not be pledged for any debts, and in case of the death of said payee, said note is to be void.

"Dated at Sioux City, Iowa, this 31st day of December, A. D. 1920.
"Signed    W. S. Gilman."

Since the issue of the notes above described, the petitioner has annually paid his wife and children 5 per cent. of the principal, and the amounts so paid have been deposited in the general bank accounts of the payee subject to their use. Petitioner's wife has used some of the money so received for the payment of household expenses, but has not been restricted in the use thereof by any agreement with her husband.

In his income tax returns for each of the taxable years, the petitioner deducted the amounts paid as stated above from his gross income as interest paid. Upon audit, the Commissioner disallowed such deductions and restored the amounts thereof, $14,400 in each year, to taxable income. Since the notes were issued, the wife and children of the petitioner have made separate income tax returns, and each has included in gross income the amounts received from the petitioner on account of the notes in question.

The single question presented is whether or not the payments made by petitioner to his wife and children in each of the taxable years are deductible from gross income under the provisions of section 214 (a) (2) of the Revenue Act of 1921 (42 Stat. 227, 239), which reads as follows:

"(a) That in computing net income there shall be allowed as deductions:

"(2) All interest paid or accrued within the taxable year on indebtedness. * * * *"

The petitioner, in December, 1919, assigned to his wife land purchase contracts calling in the aggregate for the payment of $240,000. One half of this amount was for the personal use and benefit of his wife, and the other half was to be equally divided among his three children. The contracts bore interest at the rate of 6 per cent., and provided for payments on the principal at stated times. There was no consideration for the making of these assignments, but they were in the nature of gifts to the members of petitioner's family. They were in effect but one year. During that time what payments, if any, were made on account of interest or installments of principal falling due are not disclosed by the evidence. If any payments were made, they were collected by petitioner and deposited to his account. While the assignments were held by his wife, the petitioner deposited to her credit $1,200 per month. This indicates that the time and the amount of the deposits were in no wise dependent upon collections made on the assigned contracts.

In December, 1920, the value of the land contracts had greatly depreciated, and petitioner conceived that he should repossess the agreements to purchase farm lands, which he did. The assignments were canceled, and, in lieu thereof, petitioner executed instruments, somewhat in the form of notes for the face amount of $288,000. These so-called notes were made payable to his wife in the sum of $144,000 and to each of his three children in the sum of $48,000. The interest stipulated was 5 per cent., so that the aggregate annual interest payable became $14,400,

the exact amount of the interest on the land contracts.

■ The form of these instruments referred to as "promissory notes." is very unusual. They become due thirty years after date, and are payable only to the payee named, and are void in the event of the death of the said payee; they are nonnegotiable, nonassignable, and nonpledgeable as security for any debt. Consequently they are not promissory notes because. not unconditional promises to pay. *Code of Iowa 1924*, §§ 9461, 9463.

Subsequent to the execution of these instruments, petitioner annually deposited the interest that became due to the account of the payees. His wife used the money from this source in payment of the ordinary household expenses.

The facts in this case clearly show that petitioner used the above means in providing what he conceived to be the proper allowance for the members of his family. That he desired to provide a definite amount is shown by his action in giving his family contracts of the face value of $240,000, which bore 6 per cent. interest, and on this basis would produce $14,400 per year. Then when he caused the assignments to be surrendered he substituted "notes" of the face value of $288,000 bearing 5 per cent. interest, which would yield the same amount. The control of his property he has at all times retained, and has made and canceled assignments thereof at will. The conclusion is warranted that the situation was no different after the notes were given.

■ A debt is "that which is due from one person to another, whether money, goods or services; that which one person is bound to pay to another, or perform for his benefit." Webster's New International Dictionary. "In order to create an indebtedness there must be an actual liability at the time, either to pay then, or at some future time." Bouv. Law Dict., Vol. 2, page 1531. "Every debt must be solvendum in praesenti, or solvendum in futuro—must be certain and in all events payable; whenever it is uncertain whether anything will ever be demandable by virtue of the contract, it cannot be called a 'debt.' While the sum of money may be payable upon a contingency, yet in such case it becomes a debt only when the contingency has happened, the term 'debt' being opposed to 'liability' when used in the sense of an inchoate or contingent debt." 17 Corpus Juris, 1377. Emil Weitzner v. Commissioner, 12 B. T. A. 724; Saleno v. City of Neosho, 127 Mo. 627, 30 S. W. 190, 27 L. R. A. 769, 48 Am. St. Rep. 653; Lowery v. Fuller, 221 Mo. App. 495, 281 S. W. 968; Clinton Mining & Mineral Co. v. Beacom (D. C.) 264 F. 228; Bolden v. Jensen (D. C.) 69 F. 745. The term "indebtedness" as used in the Revenue Act implies an unconditional obligation to pay. Any definition more flexible would only encourage subterfuge· and deception. The "notes" involved in this case did not constitute a debt of the maker because their payment was contingent upon the payees being alive at the maturity of the instruments in 1950.

· It is contended that the "notes" were issued and given to purchase the outstanding assignments of land contracts, and are, therefore supported by a consideration. This would not alter the character of the instruments if this position were correct, but it is not supported by the facts. The instruments recite, "This note is given in exchange for certain securities which I turned over to the payee and which have now been returned to me." This is a correct statement of the transactions, and no fact found warrants the conclusion that the "notes" were given in payment of the purchase price of the assignments. The "notes" were gifts just as truly as were the assignments. Consequently, they amounted to nothing more than a promise to make an executed gift in the future. They were revocable at will, and at all times unenforceable against the maker. The Board so found, and its decision is supported by the authorities. 28 Corpus Juris, 660; Simpson Centenary College v. Tuttle, 71 Iowa, 596, 33 N. W. 74; Latcham v. Latcham, 195 Iowa, 221, 191 N. W. 977; Meginnes v. McChesney, 179 Iowa, 563, 160 N. W. 50, L. R. A. 1917E, 1060.

The petitioner was obliged to provide for his family before the execution of these papers, and, aside from the statutory deductions for dependents, was not entitled to take any credit for money so expended. To permit petitioner to put his obligation in this form, classifying it as indebtedness and treat the funds furnished his family as interest, would be to grant him deductions not authorized by the statute. Bing v. Bowers (D. C.) 22 F.(2d) 450.

The conclusion reached by the Board was in all respects correct, and the petition to review is denied.