GEORGE T. WILLIAMS, AND MARCIA J. WILLIAMS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 458–66. Filed March 29, 1967.

George T. Williams, pro se.
*Robert A. Roberts*, for the respondent.

[7] Cf. *Emil Klempner*, T.C. Memo. 1955–307.

TANNENWALD, *Judge:* Respondent determined deficiencies in petitioners' income tax for the taxable years and in the amounts as follows:

| Year | Deficiency |
|------|-----------|
| 1961 | $360. 88 |
| 1962 | 216. 44 |
| 1963 | 49. 51 |

All issues raised by the deficiency notice have been settled except the question whether any portion of the sum paid by petitioner in 1961 in connection with the reinstatement of a certain insurance policy constitutes interest within the meaning of section 163 of the Internal Revenue Code of 1954.[1]

### FINDINGS OF FACT

Some of the facts are stipulated and are found accordingly.

George T. Williams and Marcia J. Williams are husband and wife with their legal residence in Cincinnati, Ohio, at the time of their filing the petition herein. They filed joint Federal income tax returns for the taxable year 1961 with the district director of internal revenue, Louisville, Ky., and for the taxable years 1962 and 1963 with the district director of internal revenue, Cincinnati, Ohio. Any reference to petitioner shall be to George, Marcia being a party to this proceeding solely by reason of having filed a joint return with George.

Some time prior to February 1, 1949, while petitioner was in the U.S. Army, he acquired a $10,000 National Service Life Insurance policy from the Federal Government. Effective as of February 1, 1949, petitioner converted this policy into a Twenty Payment Life Plan policy (hereafter referred to as the policy) with a face value of $10,000. The policy contained the following pertinent provisions:

#### 2. REINSTATEMENT

If this policy has lapsed but has not been surrendered for its net cash value, it may be reinstated at any time provided the following requirements are met:

(a) A written application signed by the Insured, and evidence of health satisfactory to the Administrator must be furnished if required.

(b) Premiums for all monies in arrears must be paid, with interest from their respective due dates at a rate to be determined by the Administrator.

(c) Any indebtedness on this policy at the time of lapse must be repaid or reinstated, together with policy loan interest thereon. Any excess of the indebtedness and interest over the reserve of this policy at the time of reinstatement must be paid.

#### 7. EXTENDED TERM INSURANCE

If this policy lapses after being in force at least 3 months, it will be automatically extended as term insurance. The amount of the extented term insurance will be the face amount of this policy less any indebtedness. The term of such insurance will run from the date of lapse for as long as the reserve at that time

---

[1] All references are to the Internal Revenue Code of 1954.

plus any dividend accumulations less any indebtedness will purchase when applied as a net single premium at the Insured's attained age. * * *

### 8. POLICY LOANS

Provided this policy is not lapsed, the Insured may obtain a loan on the security of this policy at any time after the end of the first policy year. * * *

The loan will bear interest at a rate to be determined by the Administrator. Any interest not paid when due will be added to the existing loan and bear interest at the same rate. *If at anytime the indebtedness equals or exceeds the reserve plus any dividend accumulations, this policy will cease and become void.* The indebtedness on this policy at any time includes accrued interest. [Emphasis added.]

On March 15, 1951, petitioner obtained a loan of $333 as provided for in the policy.

Petitioner paid the monthly premiums of $20.80 during the period February 1, 1949, through June 1, 1951. The policy lapsed as of July 1, 1951, for nonpayment of premiums but, in accordance with the terms of the policy, continued in effect as extended term insurance until October 4, 1952.

In 1961, petitioner applied to have the policy reinstated in accordance with the "Reinstatement" provisions. After submission to the Veterans' Administration of evidence of satisfactory health, the policy was reinstated, effective October 10, 1961, at the 1949 premium rate, upon the payment of $459.54 by petitioner in the form of a check dated October 14, 1961. The $459.54 which the Veterans' Administration stated was necessary for the reinstatement was arrived at in the following manner:

| | |
|---|---:|
| Premiums due but not paid through October 31, 1961 (124 months at $20.80 per month) | $2,579.20 |
| Four percent per annum on unpaid premiums | 595.90 |
| Outstanding loan as of July 1, 1951, plus 4% per annum thereon through October 31, 1961 | 505.34 |
| Total (owed by petitioner) | 3,680.44 |
| Loan value of policy as of October 31, 1961 _ _ _ _ _ $2,584.00 | |
| Accumulated dividends _ _ _ _ _ _ 636.90 | |
| Total credit | 3,220.90 |
| Amount of petitioner's check | 459.54 |

On their return for the taxable year 1961, petitioners claimed a deduction in the amount of $768.24 as "interest" attributable to the reinstatement of the policy. The sum of $768.24 was computed as follows:

| | |
|---|---:|
| "Interest" paid on past premiums | $595.90 |
| "Interest" on 1951 loan ($333) for the period ended October 31, 1961 | 172.34 |
| | 768.24 |

Respondent has disallowed the entire $768.24 claimed interest deduction.[2]

OPINION

Petitioner claims a deduction for the $768.24 which was paid to the Veterans' Administration as "interest" at the time of reinstatement of petitioner's life insurance policy. Respondent contends that none of the $768.24 is deductible because it was not paid on "indebtedness," as required by section 163(a). We agree with respondent.

The amount involved consists of $595.90 "interest" on the unpaid premiums and $172.34 "interest" on petitioner's 1951 loan.

Section 163(a) provides: "There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness.

The courts have interpreted "indebtedness" to require an existing unconditional enforceable obligation to pay a principal sum. *Autenreith* v. *Commissioner*, 115 F. 2d 856 (C.A. 3, 1940), affirming 41 B.T.A. 319 (1940); *Lewis C. Christensen*, 40 T.C. 563 (1963); *Gilman* v. *Commissioner*, 53 F. 2d 47 (C.A. 8, 1931), affirming 18 B.T.A. 1277 (1930). "In the business world 'interest on indebtedness' means compensation for the use or forbearance of money. In the absence of clear evidence to the contrary, we assume that Congress has used these words in that sense." See *Deputy* v. *Dupont*, 308 U.S. 488, 498 (1940).

The payments simply do not meet these standards. During the period from lapse to reinstatement, petitioner did not have the use of any of the insurance company's money, nor did the company forbear the collection of any money due it; petitioner had no coverage and owed nothing. The "interest" on cash premiums which he paid at the time of reinstatement represented no more than an additional cost of reinstating the policy. The fact that a percentage was used in the computation and that it may have been designated "interest" does not avoid this conclusion.[3] The payment was necessitated solely by petitioner's election to reinstate the policy in October 1961.

The $172.34 "interest" paid on the $333 loan suffers from the same infirmity. In July 1951 the policy lapsed. The net cash value after the deduction of the loan plus accrued interest was applied to extended term insurance. From that time on there was no indebtedness. The $172.34 paid at the time of reinstatement in 1961 was simply an additional cost required by the insurance company to counterbalance the unavailability of the $333 as an income-producing item dur-

---

[2] Petitioner also deducted $19.40 as interest for the period ended Dec. 31, 1961, on a new loan on the policy. Respondent has not questioned the deduction of this amount as interest, payment of which was represented by a check of petitioner dated Dec. 30, 1961.

[3] Petitioner's attempt to distinguish *J. I. Fleischer,* a Memorandum Opinion of this Court dated Apr. 26, 1943, and *Samuel J. Johnson,* a Memorandum Opinion of this Court dated June 8, 1943, on the ground that in those cases conversions of policies were involved, whereas he reinstated an existing policy, is without merit. Cf. I.T. 3545, 1942–1 C.B. 49, and Rev. Rul. 66–168, 1966–1 C.B. 25.

ing the period between lapse and reinstatement—an essential element in the development of a proper reserve to a policy conversion at rates applicable to the age of petitioner in 1949 instead of his attained age in 1961.

In order to reflect the adjustments between the parties,

*Decision will be entered under Rule 50.*