STERLING G. HOWLETT AND CLARA HOWLETT, ET AL.,[1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 5354–67, 1115–68, 1116–68, 1117–68.   Filed August 9, 1971.

*Lyle M. Hanson* and *Albert L. Park*, for the petitioners.
*Edward G. Lavery*, for the respondent.

FORRESTER, *Judge:* In these consolidated proceedings respondent has determined deficiencies in petitioners' income taxes as follows:

[1] Cases of the following petitioners are consolidated herewith: Raymond P. Ascue and Phyllis B. Ascue, docket No. 1115–68; Daniel W. Cooley and Carole S. Cooley, docket No. 1116–68; and N. Leon Payne and Patricia A. Payne, docket No. 1117–68.

| Petitioners | Docket No. | Taxable year | Deficiency |
|---|---|---|---|
| Sterling G. and Clara Howlett_____ | 5354–67 | 1963 | $233. 76 |
|  |  | 1964 | 250. 78 |
| Raymond P. and Phyllis B. Ascue_____ | 1115–68 | 1963 | 210. 34 |
|  |  | 1964 | 228. 60 |
| Daniel W. and Carole S. Cooley_____ | 1116–68 | 1964 | 226. 80 |
|  |  | 1965 | 212. 69 |
|  |  | 1966 | 172. 31 |
| N. Leon and Patricia A. Payne_____ | 1117–68 | 1963 | 249. 00 |
|  |  | 1964 | 207. 35 |
|  |  | 1965 | 217. 38 |

The question we must decide is whether petitioners are entitled to any deductions for asserted payments of interest and real estate taxes.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation and the exhibits attached thereto are incorporated herein by this reference.

In docket No. 5354–67 petitioners Sterling G. and Clara Howlett are husband and wife and resided in Overland Park, Kans., at the time of the filing of their petition herein. They filed joint Federal income tax returns for the taxable years 1963 and 1964 on the cash basis with the district director of internal revenue in Wichita, Kans.

In docket No. 1115–68 petitioners Raymond P. and Phyllis B. Ascue are husband and wife and resided in Shawnee Mission, Kans., at the time of the filing of their petition herein. They filed joint Federal income tax returns for the taxable years 1963 and 1964 on the cash basis with the district director of internal revenue in Wichita, Kans.

In docket No. 1116–68 petitioners Daniel W. and Carole S. Cooley are husband and wife and resided in Overland Park, Kans., at the time of the filing of their petition herein. They filed joint Federal income tax returns for the taxable years 1964, 1965, and 1966, on the cash basis with the district director of internal revenue in Wichita, Kans.

In docket No. 1117–68 petitioners N. Leon and Patricia A. Payne are husband and wife and resided in Littleton, Colo., at the time of the filing of their petition herein. They filed joint Federal income tax returns for the taxable years 1963, 1964, and 1965, on the cash basis with the district director of internal revenue in Wichita, Kans.

Johnson County Rentals, Inc. (hereinafter referred to as Rentals), was a family operation run by the Beckners. Rentals bought residential properties from individuals and resold them to investors. The investors would in turn lease back the properties to Rentals for 5

years. The investors also gave to Rentals options to repurchase the properties. Rentals then assumed responsibility for the management of the properties.

Rentals sought occupants for the properties over which it had responsibility and used newspaper advertisements for this purpose. It advertised the properties as rental properties; the advertisements also contained clauses which indicated that options to purchase were available.

Upon locating an occupant for a property, Rentals and the prospective occupant executed a form agreement entitled "OPTION AGREEMENT—Flat Payment" (hereinafter referred to as the option agreement or the form (319A) option agreement). The form (319A) option agreement was substantially the only form agreement that Rentals ever used and it was employed for each petitioner herein.[2] The following agreement between the Ascues and Rentals is typical of this form agreement:

319A

The Lane Printing Company
Kansas City, Kansas

OPTION AGREEMENT—Flat Payment

THIS AGREEMENT, between Johnson County Rentals, Inc., and Raymond P. Ascue, Phyllis B. Ascue, hereinafter called the second party, WITNESSETH, that in consideration of the sum of Two Hundred Seventy and no/100 ($270.00) Dollars, the receipt of which is hereby acknowledged, the said first party agrees to give and does give the second party until the 1st day of May 1963, the option to purchase the following described real property, situated in the County of Johnson, State of Kansas, to-wit:

A residence located at 8833 Riley, Shawnee-Mission, Kansas
for Seventeen Thousand Nine Hundred Fifty and no/100 ($17,950.00) Dollars, and does further agree that said second party shall have the right to and may extend the option hereby given until the 1st day of June, 1963, and from month to month thereafter by the payment of the sum of $135.00 Dollars, on or before the 1st day of May, 1963, and on or before the 1st day of each succeeding month until April 1, 1968.

Said monthly payment of $135.00 includes $14.77 per month to apply to the actual cost of taxes and insurance. The escrow account is estimated to be $15.00 per month short and is to be cleared annually on May 1, starting 1964.

Said first party further agrees that if said second party shall exercise the option hereby granted and purchase said real property at any time while this option shall be kept in force by said second party making the payments herein provided for, to give second party credit on the purchase price for all payments which he shall have made under and by virtue of this agreement for said option and to keep it in force, less the amounts deducted as interest from each of the aforesaid payments as hereinafter provided.

It is further agreed and understood that said second party may take possession of said real property on the 15th day of March, 1963, and occupy it in

---

[a] Both petitioners signed in docket No. 1117–68, and for the year 1964 in docket No. 5354–67. In all other instances, petitioner husband signed alone.

person or by tenant during the time that they keep this option in force, as provided herein, free from rent, and that said second party, in consideration of occupying said premises, agrees to pay to first party each month while this option is in force, in addition to the sums hereinbefore provided to be paid to keep said option in force, an amount equal to one-twelfth of the total amount of taxes, special assessments, tax bills and premiums upon insurance policies, in some company authorized to do business in the State of Kansas, in the amount of $15,000 against loss by fire, and $15,000 for loss by windstorm, for the current year, and hereby authorizes the first party to use the funds so paid to pay said taxes, special assessment, tax bills and insurance upon said real estate. In the event second party shall fail to make any of the payments herein provided to be made for the payment of taxes, special assessments, tax bills or insurance, the right of second party to occupy said premises shall cease forthwith, and first party shall have the right to re-possess said premises. In the event second party shall occupy said premises under this agreement, without making the payments herein provided to be made for taxes, special assessments, tax bills and insurance, first party shall have the right to recover from second party the amount thereof during such occupancy, with interest at ten per cent per annum thereon, or add the amount thereof and said interest to the purchase price hereinbefore specified. It is understood that the first party will pay all taxes, special assessments and tax bills upon said real estate for the years prior to 1963, and that the second party shall provide, as hereinbefore set forth, for the payment of subsequent taxes, tax bills and special assessments thereon, in the event he is in possession of said real estate.

It is further agreed by second party that as a further consideration and compensation for the right to occupy said premises free of rent, there shall be deducted by first party from each of the aforesaid payments made by second party for purpose of extending the option herein granted, an amount equal to the interest at the rate of 6½ per cent per annum for the number of days between said payments as provided herein, on a sum equal to the difference between the price for which said second party is given the option to purchase said real property by the terms of this agreement and the amount which they have paid the first party for said option and the net amount paid to keep the same in force after said deductions as for interests, but in the event of said second party failing to keep said buildings insured or failing to pay said special assessments and tax bills, taxes and amounts as for interest as aforesaid, then in that event the right to occupy said real property shall at once cease and determine, and second party agrees to at once surrender and give possession of said real property to the first party, and that said first party may at once take possession thereof without notice or may eject said second party therefrom either by suit in forcible detainer or otherwise, but it is hereby agreed and understood that no title, interest or estate in said premises is conveyed by this agreement to second party, but only the right to purchase said real property if he so chooses, in accordance with the terms of the option hereby given, and to occupy said premises as provided herein, and only as provided herein; and it is further agreed and understood that second party is not hereby obligated to purchase said real property or to pay any sum by this contract, except if he occupies said premises in person or by tenant, to pay the insurance, taxes, special assessments, tax bills and interest and provided herein. It is further agreed and understood that if the second party occupies said premises in person or by tenant, that he will not use them, or permit them to be used for the purpose of storing, selling, or manufacturing intoxicating liquor, or in

any way in violation of the prohibitory law of Kansas. In the event said second party does use, or permit said premises to be used contrary to the aforesaid agreement and understanding, then his right to occupy said premises in person or by tenant shall at once cease and determine, and first party may take possession of said premises or recover possession thereof by action in peaceable entry and forcible detainer.

It is further stipulated and agreed by and between the parties hereto that time is the essence of this agreement and all parts thereof. In the event of the failure of the second party to make any of the payments to keep this option in force at the time provided herein, all moneys previously paid by said second party upon this agreement and all improvements made on said real property shall be forfeited to said first party as liquidated damages, and this agreement shall cease and determine, and said first party shall have the right to immediately enter upon said real property and take possession thereof, if said second party is in possession, together with the improvements thereon, and said second party agrees to give and surrender possession thereof without delay or hindrance, and that no court shall in any respect relieve said second party from a strict compliance with all the terms hereof. It is however, agreed that after the second party has kept this option in force for the period of 24 months after the 1st day of April, 1963, as provided herein, he shall have a grace of one month in making of subsequent payments for the purpose of keeping said option in force, but no payment shall at any time be more than one month in arrears. All payments provided for in this option agreement shall be payable at Johnson County Rentals, Box 1203, Mission, Kans., or at such other place as first party shall designate.

It is further agreed and understood between the parties hereto that when the amount required to take up this option has been reduced to $ as above that the first party may obtain a loan, secured by mortgage on the above described property, for the amount necessary to take up this option and to cover the necessary expenses of obtaining said loan, bearing interest at a rate not to exceed 6½ per cent per annum, and payable in not less than three years, and first party may deed the property herein described to second party, subject to said mortgage, and said deed shall be accepted as full and complete compliance with this option.

It is further agreed between the parties hereto that the failure of the first party to insist upon the forfeiture of this agreement or to take possession of said premises immediately upon the failure of the second party to keep said option in force as provided herein, or that the acceptance of payments for the purpose of keeping said option in force after he is entitled to said forfeiture and to take possession of said property, shall not be considered a waiver of said forfeiture or right to take possession except as to the specific payment accepted, and said first party may at any time during the continuance of any default in any payment for the purpose of keeping said option in force insist upon and enforce the forfeiture and right to take possession provided for herein. And the acceptance of payments after having declared a forfeiture or having taken possession of or having demanded possession of said premises shall be construed only as a waiver of the forfeiture declared and not as a waiver of the right thereafter to declare a forfeiture or to again take possession of said premises for default then existing or that may thereafter occur.

The second party shall not assign or transfer this option or his rights thereunder without the written consent of the first party. If said second party shall at any time while the option hereby granted is in force, as provided by the terms

of this agreement, exercise his right to purchase said premises, first party agrees that he will convey said premises to the second party by warranty deed warranting the title to said premises as of the date of this agreement; and furnish to second party free of expense an abstract of title to above described property certified to March 1, 1963.

It is mutually agreed that all the covenants and agreements herein contained shall extend to and be obligatory upon the heirs, executors and administrators and assigns of the respective parties.

IN WITNESS WHEREOF, the parties have hereunto set their hands and subscribed their names, this 13 day of March, 1963.

Executed in Duplicate.

X    Raymond P. Ascue<br>
_____<br>
Johnson County<br>
RENTALS, INC.<br>
by: [Illegible]

In executing option agreements for each property it was Rentals' practice to set a higher option purchase price than it had originally paid for each property. Theresa Raydo, who did part-time secretarial work for Rentals during 1963 and 1964, was familiar with all of its day-to-day operations. She did not know of a single instance where any occupant had ever exercised the option to purchase described in each option agreement.

In April or May of 1965, Rentals began experiencing financial difficulties. Towards the end of 1965, Rentals notified the investors that it would not be able to fulfill the 5 year lease-back arrangement and that the investors should take back the properties to manage themselves. For all intents and purposes Rentals was out of business by March 1966.

The Howletts resided at 7615 Marty, Shawnee Mission, Kans., from some time in 1961 until about June 1963, at which time they moved to 5055 Buena Vista, Shawnee Mission, Kans., where they remained until some time in 1965. At each residence the Howletts occupied the premises in accordance with the terms of a form (319A) option agreement between themselves and Rentals.

They made payments pursuant to each option agreement by submitting each month to Rentals a check for the agreed monthly payment. Upon first moving into each of the properties, they paid a double monthly payment. The purpose of this double payment was that in the event that the Howletts "skipped out," Rentals would have the "last month's" payment.

With each option agreement, Rentals supplied the Howletts with a passbook which they submitted to Rentals along with each monthly payment. Each passbook provided columns for the due date of each payment, the total payment, and the actual date of payment. Each passbook also provided columns which allowed for the division of each monthly payment into portions for "interest," "principal," "taxes,"

and "insurance." Upon receipt of a payment Rentals made appropriate entries, initialed the entries, and returned the passbook to the Howletts.

Each passbook also provided a column for a balance which decreased in direct relation to the amount apportioned each month as "principal." Thus, in the passbook for the property at 7615 Marty the beginning balance before the first payment on January 1, 1961, was $15,950 and the last balance as of July 1, 1963, was $15,579.91. Similarly, in the passbook for the property at 5055 Buena Vista, the beginning balance as of July 6, 1963, was $20,939.13, and the final balance as of May 1, 1965, was $20,672.18.

The amounts denominated as "insurance" were put into an escrow fund. At the end of each year the amount in the escrow would not be adequate for the purpose it was intended so that the Howletts were obliged to pay an additional lump sum to make up the deficiency. In connection with these payments for "insurance" Rentals submitted to Sterling Howlett a homeowner's insurance policy for the property at 5055 Buena Vista. The policy covered the period from July 11, 1963, through July 11, 1966.

The Howletts ceased making payments on the property at 7615 Marty at the time that they made the second option agreement with respect to the property at 5055 Buena Vista. Thus, they were able to stop payments on one property at the same time that they began making payments on the other property. When the Howletts entered into the option agreements it was their understanding that they were building up an equity toward the purchase of each house. When they stopped making payments on the property at 7615 Marty they believed that any equity they had built up would be transferred to the property at 5055 Buena Vista. The Howletts never received any of the equity they believed they were building up.

The Howletts never exercised or attempted to exercise either the option on the property at 7615 Marty or the option on the property at 5055 Buena Vista.

By two documents, each entitled "Kansas Quit-Claim Deed" and dated May 28, 1965, the Howletts did "Remise, Release and forever Quit-Claim" unto Rentals the properties at 7615 Marty and 5055 Buena Vista, respectively. They executed the "Kansas Quit-Claim Deed" with respect to the property at 7615 Marty even though they believed that the option agreement with respect to that property had been canceled in 1963.

In June 1965, the Howletts moved to Tucson, Ariz., for health reasons.

As well as having been one of Rentals' employees Theresa Raydo (hereinafter referred to as Theresa) had been an investor in Rentals' leaseback scheme. Over a period of 4 years she made about four invest-

ments and agreed that Rentals should assume the management of each investment. She also gave Rentals options to repurchase the properties.

One of the properties in which Theresa invested was a property located at 8723 Riley, Overland Park, Kan. She invested in that property in August 1962, and continued to own it through the end of 1966. During 1964, 1965, and the first 8 months of 1966, the property was occupied by the Cooleys. Theresa's understanding of the arrangement by which the Cooleys lived at 8723 Riley was that they were renting and had an option to purchase.

The Cooleys had entered into a form (319A) option agreement in January 1962. They had also entered into a passbook arrangement similar to the one between the Howletts and Rentals. The Cooleys believed that they were buying the property at 8723 Riley.

In January 1966, Rentals ceased to manage the property at 8723 Riley. In January 1966, Theresa, following a form that Rentals had given to her, wrote the following letter to the Cooleys:

> Box 1242
> 2801 W. 50TH TERR.
> SHAWNEE MISSION, KS.

MR. AND MRS. DANIEL W. COOLEY
*8723 Riley*
*Overland Park, Kansas*
DEAR MR. AND MRS. COOLEY:

As the enclosed letter indicates, we have taken responsibility for the property you are purchasing under an option contract with Johnson County Rentals, Inc., now assigned to us.

We are hopeful of maintaining a good relationship with you, and hope the home is meeting your requirements. An outside appraisal of the property shows it to be well cared for, in keeping with other homes in the area.

Your option agreement has one more year to be exercised; however, if you have any intent to exercise your option to buy in the near future, we will be happy to adjust the purchase price and make every effort to make this possible.

We are hopeful the property is satisfactory for your requirements, but if you find yourself needing other quarters, we will be happy to discuss it and see if we could allow you a transfer of equity towards other property we may have available at a given time, as we do own or control a number of excellent Johnson County properties. Any referrals of prospective option buyers or lease renters will be appreciated.

Your payments are due and payable on the 1st of each month, and incur a late charge of $5.72 per month when not paid by the 10th. This reflects a late charge to us by the loan company when we cannot meet our obligations on time, due to late payments by occupants.

According to the records furnished us, you have paid a total of $1,119.42 in interest on your contract during 1965, which you might want to check to use on your income tax report. If you have any questions, please feel free to call us.

With the sincere desire to have a mutually desirable relationship, we are
> Yours very truly,

> (S) Mrs. John Raydo
> MRS. JOHN RAYDO
> Ad6-5334

P.S. Your payments is enclosed, which should again be used in the future.

Because she was faced with taking back the management of the property, Theresa sought to encourage the Cooleys to exercise their option. The Cooleys did not show any interest in purchasing the property and they never did exercise their option.

Prior to January 1966, Theresa had received net income checks from Rentals from the property at 8723 Riley. On her income tax returns she had reported these amounts as lease payments. During 1966, while the Cooleys remained at 8723 Riley, they made their monthly payments directly to Theresa.

The Cooleys left 8723 Riley in the latter part of August 1966, after they had heard that Rentals was going bankrupt and that their arrangement with Rentals was "phony." They stopped making payments on the property at 8723 Riley at approximately the same time that they moved away from it.

In 1962, Mr. and Mrs. Earl De Graffenreid invested in a house and lot from Rentals. This property was located at 8833 Riley, Shawnee Mission, Kans., and was occupied by the Ascues from March 1963 until July 1967. Rentals ceased to manage the property at 8833 Riley in January 1966. At that time the Ascues began making their monthly payments on the property to Theresa, who in turn conveyed the payments to the De Graffenreids. The Ascues, who moved from 8833 Riley in July 1966 or 1967, never exercised their option to purchase.

The Paynes had also entered into a form (319A) option agreement with Rentals.

During the years in issue it is stipulated that the various petitioners made payments in at least the following amounts to Rentals and, in respect of such payments, claimed deductions for interest and real estate taxes as follows:

| Petitioners | Year | Payments to rentals | Claimed deductions | |
|---|---|---|---|---|
| | | | Interest | Real estate taxes |
| Sterling G. and Clara Howlett | 1963 | $2,080.38 | $1,201.30 | $247.80 |
| | 1964 | 1,760.00 | 1,352.62 | 250.00 |
| Raymond P. and Phyllis B. Ascue | 1963 | 967.00 | 967.00 | (3) |
| | 1964 | (1) | 2 1,143.00 | (3) |
| Daniel W. and Carole S. Cooley | 1964 | 1,134.00 | 1,134.00 | (3) |
| | 1965 | 1,119.42 | 1,119.42 | (3) |
| | 1966 | (4) | 3 646.00 | (3) |
| N. Leon and Patricia A. Payne | 1963 | (1) | 2 995.00 | 2 250.00 |
| | 1964 | (1) | 2 990.00 | 2 272.00 |
| | 1965 | (1) | 2 997.00 | 2 242.00 |

1 Not stipulated, and no showing that any amounts were so paid.
2 Not stipulated; figures taken from income tax returns and/or petitions.
3 Real estate tax deduction not in issue.
4 No amounts paid to Rentals and no showing of total amounts paid to Theresa.

By a motion duly filed in this Court on January 13, 1971, petitioners asked for additional time to submit their brief in this case. We granted that motion and extended the time for filing of their brief to March 1, 1971, but no such brief has ever been filed.

OPINION

Each of the four couples who are petitioners herein entered into substantially similar option agreements with Rentals. The option agreements entitled each couple to occupy one of the residential properties managed by Rentals and also gave to each couple a 5-year option to purchase such residential property. In order to continue occupying such residential property and in order to maintain the option each couple was obliged to make monthly payments to Rentals. The evidence fails to show that any of the petitioners here ever exercised their options. In fact there is evidence to indicate that of all of the people (in addition to petitioners) who entered into these option agreements with Rentals, not one ever exercised his option to purchase.

The question we must answer is whether petitioners are entitled to any deductions for interest or real estate taxes in respect of the residential properties covered by the option agreements.

We should first point out that there has been no showing that the Ascues ever made payments to Rentals in 1964, or that the Cooleys ever made any such payments in 1966. Similarly, there has been no showing that the Paynes ever made any payments to Rentals during any of the years in issue in their case. But even assuming that all of the petitioners had made the payments to Rentals in the amounts claimed, we could not allow the interest deductions in issue here.

Section 163(a) provides that: "There shall be allowed as a deduction all interest paid or accrued within the taxable year *on indebtedness*." (Emphasis supplied.) An "indebtedness" is an existing, unconditional, and legally enforceable obligation for the payment of a principal sum. E.g., *Gilman* v. *Commissioner*, 53 F. 2d 47, 50 (C.A. 8, 1931), affirming 18 B.T.A. 1277 (1930); [3] *George T. Williams*, 47 T.C. 689, 692 (1967), affd. 409 F. 2d 1361 (C.A. 6, 1968), certiorari denied 394 U.S. 997 (1969).

Here petitioners did not incur any unconditional enforceable obligation for a principal sum. The only real obligation they incurred was a conditional one which was set out in two sentences of the option agreement:

In the event second party shall fail to make any of the payments herein provided to be made for the payment of taxes, special assessments, tax bills or insurance, the right of second party to occupy said premises shall cease forthwith, and first party shall have the right to re-possess said premises. In the event second party shall occupy said premises under this agreement, without making the payments herein provided to be made for taxes, special assessments, tax bills and insurance, first party shall have the right to recover from second party the amount thereof during such occupancy, with interest at ten percent per annum thereon, or add the amount thereof and said interest to the purchase price hereinbefore specified.

---

[3] In the words of the circuit court:

The term "indebtedness" as used in the Revenue Act implies an unconditional obligation to pay. Any definition more flexible would only encourage subterfuge and deception. * * *

Thus, if petitioners failed to make one of the above monthly payments they would be obliged to move out, and if they did not move out they would be obliged to pay 10 percent per annum interest on the missed payments. Such obligations do not differ radically from those incurred in assumption of a rental tenancy.

The option agreement provided that the optionee could occupy the optioned property "free from rent" for as long as the option was kept in force. In substance, however, the monthly option payments *were* rental payments and the option agreement was essentially a rental agreement, only incidentally giving the tenant-optionee an option to purchase the property he was occupying.

That Rentals may have divided each payment into portions denominated "interest," "principal," "taxes," and "insurance" is of no import. Rentals made such division in order to calculate the amount that would be set off against the purchase price if and when the option to purchase was ever exercised. As a bargaining device such division and setoff may have made exercise of the option more attractive to a prospective homebuyer. But as a device to transform (for Federal income tax purposes) large parts of rental payments into interest payments, we hold that it was completely ineffectual.

In docket Nos. 5354–67 and 1117–68, the Howletts and the Paynes respectively seek deductions for real estate taxes which they claim to have paid. As indicated by our findings of fact, there has been no showing that the Paynes made any payments at all. In the Howletts' case it has not been shown that any part of the payments they made to Rentals was ever paid to the appropriate taxing authority during the years in issue. Therefore, respondent's disallowance of the real estate tax deductions must be upheld.

*Decisions will be entered for the respondent.*