Thomas W. and Ingrid L. Cameron, Petitioners v.
Commissioner of Internal Revenue, Respondent

Docket No. 19025–81.     Filed September 6, 1983.

Thomas W. Cameron and Ingrid L. Cameron, pro se.
*Edward I. Kaplan,* for the respondent.

### OPINION

Nims, *Judge*: Respondent determined a deficiency in petitioners' Federal income tax for the taxable year 1977 of $144. The issue for decision is whether petitioners may deduct under section 163[1] certain payments made by petitioner-husband to the U.S. Civil Service Retirement and Disability Fund subsequent to his reemployment by the Internal Revenue Service.

All of the facts have been stipulated and are found accordingly.

Petitioners Thomas W. Cameron (petitioner) and Ingrid L. Cameron, husband and wife, resided at San Rafael, Calif., at the time they filed the petition.

Petitioner began working for the Internal Revenue Service on October 1, 1958. As a Federal employee, amounts were withheld from his paychecks under 5 U.S.C. section 2254 (1958), and deposited to the Civil Service Retirement and Disability Fund (fund).

Petitioner resigned from his employment on April 1, 1960. On or about that date, petitioner, under 5 U.S.C. section 2261 (1958), filed an application with the Civil Service Commission

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as in effect during the year in issue.

for the return of all amounts which had been withheld from his paychecks and deposited to the fund. Following approval of his application, petitioner received a lump-sum credit in the amount of $894 in May 1960.

Petitioner was reemployed by the Internal Revenue Service on June 27, 1960, and thereafter remained continuously employed by that organization up to the time of trial.

At the time of petitioner's reemployment, 5 U.S.C. section 2254 (1958), provided:[2]

(d) Refunds of retirement deductions.

Each employee * * * who has received a refund of retirement deductions under this or any other retirement system established for employees of the Government covering service for which he may be allowed credit under this chapter may deposit the amount received, with interest. No credit shall be allowed for the service covered by the refund until the deposit is made.

(e) Interest.

Interest under subsection * * * (d) of this section shall be computed * * * from the date refund was paid, to the date of deposit or commencing date of annuity, whichever is earlier. The interest shall be computed at the rate of 4 per centum per annum to December 31, 1947, and 3 per centum per annum thereafter compounded annually. Such deposit may be made in one or more installments. * * *

On July 11, 1960, petitioner applied to recontribute to the fund the amounts previously refunded to him so as to obtain full service credit for the period October 1, 1958, to April 1, 1960, in the ultimate calculation of his retirement annuity. The application form he signed provided that payment could be made by the employee either in a lump sum or in installment payments of not less than $10 each month.

Petitioner's application was approved on or about August 30, 1960. Thereafter, petitioner elected to make payment by installments. Petitioner made his first installment payment of $10 on September 23, 1960, and his last installment payment of $25 on May 18, 1977. As of May 18, 1977, petitioner had deposited the full $894 he had been refunded, but had deposited no interest attributable to this sum.

By a letter dated July 20, 1977, petitioner was notified that interest of $380 was owing on the amount redeposited. This

---

[2]By 1977, the relevant portions of 5 U.S.C. sec. 2254 (1958), had been recodified without substantive change at 5 U.S.C. sec. 8334 (1976).

$380 of interest consisted of $9 of interest accrued from the date of the refund (May 1960) to the date petitioner's application for redeposit was approved (August 30, 1960), and $371 of interest accrued from the latter date to May 18, 1977. Petitioner paid the $380 by personal check on August 3, 1977.

Payment of $903 ($894 + $9) on August 30, 1960, would have entitled petitioner to full service credit for the prior employment period as of the date of payment. Since petitioner elected to pay by installments, he did not receive full credit for the service covered by the refund until the final payment of interest on August 3, 1977.

Petitioners claimed an interest deduction of $380 on their 1977 income tax return. Respondent disallowed this deduction on the ground that the $380 was not paid for interest on a bona fide debt.[3]

Section 163(a) provides a deduction for "all interest paid or accrued within the taxable year on indebtedness." The "indebtedness" referred to in that section must represent an unconditional enforceable legal obligation to pay money. *Commissioner v. Wilson*, 163 F.2d 680, 682 (9th Cir. 1947), affg. a Memorandum Opinion of this Court; *Autenreith v. Commissioner*, 115 F.2d 856, 858 (3d Cir. 1940), affg. 41 B.T.A. 319 (1940). In determining whether a payment is interest on indebtedness, economic realities must prevail over any label attached to the payment. See *Knetsch v. United States*, 364 U.S. 361 (1960).

In *Bovee v. Commissioner*, T.C. Memo. 1981–537, affd. in an unpublished opinion 691 F.2d 506 (9th Cir. 1982), the taxpayer was an Alaskan school teacher who upon reemployment was required to redeposit with the Alaska Teachers' Retirement System a refund she had previously received. The amount to be redeposited bore interest at a rate of 7 percent beginning on the July 1 following the date of her reemployment and continuing to the date of repayment or the date of her retirement, whichever occurred first. If the taxpayer did not repay the refund before retirement, either her annuity benefits would be withheld until the total amounts withheld

---

[3]Respondent's position on the question presented herein is set out in Rev. Rul. 70–314, 1970–1 C.B. 20.

equaled her outstanding repayment obligations or she would receive a smaller annuity.

In *Bovee*, the taxpayer sought to deduct the interest payments she made to the Alaska Teachers' Retirement System under section 163. We held, however, that the interest payments were merely part of the price of incremental annuity benefits which she was not legally obligated to purchase. Since there was no enforceable indebtedness, the interest payments were not deductible under section 163.

In *Bovee*, we also cited *Williams v. Commissioner*, 47 T.C. 689 (1967), affd. per order 409 F.2d 1361 (6th Cir. 1968). In *Williams*, the taxpayer paid past-due premiums with interest to reinstate a lapsed life insurance policy. The interest was charged for the period between the lapse and the reinstatement. We held that such interest was not interest on indebtedness within section 163, stating:

During the period from lapse to reinstatement, petitioner did not have the use of any of the insurance company's money, nor did the company forbear the collection of any money due it; petitioner had no coverage and owed nothing. The "interest" on cash premiums which he paid at the time of reinstatement represented no more than an additional cost of reinstating the policy. [47 T.C. at 692.]

We believe the instant case falls within the ambit of the *Bovee* and *Williams* decisions. The language of 5 U.S.C. section 2254 (1958),[4] makes it clear that petitioner's redeposit to the

---

[4]Petitioners suggest that such redeposits may be mandatory, pointing to 5 U.S.C. sec. 8342(h) (1976). That subsection states, in relevant part:

(h) Amounts deducted and withheld from the basic pay of an employee or Member from the first day of the first month which begins after he has performed sufficient service * * * to entitle him to the maximum annuity provided by section 8339 of this title, together with interest on the amounts at the rate of 3 percent a year compounded annually from the date of the deductions to the date of retirement or death, shall be applied toward *any deposit due under section 8334 [formerly sec. 2254] of this title*, and any balance not so required is deemed a voluntary contribution for the purpose of section 8343 of this title. [Emphasis added.]

Petitioners contend that the italicized language shows that redeposits under 5 U.S.C. sec. 8334 (1976) (formerly 5 U.S.C. sec. 2254 (1958)) are legally due and enforceable upon reemployment.

The predecessor of 5 U.S.C. sec. 8342(h) (1976), was first added to the Civil Service Retirement Act by an Act of July 12, 1960, Pub. L. 86–622, 74 Stat. 409. Its purpose was to provide for the disposition of contributions in the case of an employee whose length of service exceeds the amount of time necessary to provide him with the maximum annuity under the Civil Service Retirement Act. H. Rept. 1916, 86th Cong., 2d Sess., reprinted in [1960] U.S. Code Cong. & Ad. News 2958. The provision directs that such over-contributions

fund was entirely voluntary. Such redeposit and interest merely represented the purchase price of incremental annuity benefits. Thus, no enforceable debt underlay the interest payments as required by section 163.

Petitioners argue that although the $9 of interest allocable to the period between the refund and the acceptance of the application to redeposit may not have represented interest on indebtedness under *Williams*, the $371 of interest allocable to the repayment of the deposit in installments does represent interest on indebtedness. They contend that the accepted application to redeposit constituted an enforceable contract between petitioner and the Civil Service Commission for the installment purchase of retirement benefits.

It is well settled that stated interest charged on the unpaid balance of installment purchases is deductible under section 163. *Beek v. Commissioner*, 80 T.C. 1024 (1983); *Hudson-Duncan & Co. v. Commissioner*, 36 B.T.A. 554 (1937). However, in each such case where installment payments have given rise to interest deductions, an enforceable bilateral contract to purchase existed such that if the buyer had failed to make the installment payments, the seller could have exercised various rights under the contract against the borrower. See, e.g., *Judson Mills v. Commissioner*, 11 T.C. 25 (1948); *Hudson-Duncan & Co. v. Commissioner*, *supra*. Thus, a binding obligation to make the principal payments existed.

Unlike the situation in the above cases, there is no evidence here that the Civil Service Commission could have sued petitioner if he failed to make installment payments pursuant to the redeposit application. Although neither the statute nor

---

be used to purchase additional voluntary annuity coverage after first funding prior service periods for which contributions had never been made or for which contributions had previously been refunded.

At most, this provision suggests that for a few long-time civil servants (petitioner does not argue that he is one), redeposit may become a nonrecourse liability. Since this provision was adopted over 40 years after Congress first adopted the predecessor of 5 U.S.C. sec. 2254 (1958) (see an Act for the retirement of employees in the classified civil service, and for other purposes, ch. 195, secs. 10 and 11, 41 Stat. 618 (1920)), however, we find the provision of little relevance in construing 5 U.S.C. sec. 2254 (1958).

any regulation promulgated under it specifically states that a redeposit application is not a bilateral contract, Civil Service Commission Pamphlet 18 "Your Retirement System" (July 1975),[5] states (at p. 6):

C-17. If an employee is unable to complete redeposit of refund after paying a number of installments, what action is taken?

The sum redeposited is applied on any full period or periods of service to the best advantage, and any amount not so used is refunded or, in event of death, the employee's eligible spouse may complete the redeposit.

The fact that the Civil Service Commission would not take any action against an individual failing to make contemplated installment payments suggests the lack of enforceability of the accepted redeposit application.[6]

Since the payment of the redeposit installments was not legally enforceable, petitioners' analogy to cases involving interest charged on installment purchases fails.

Petitioners' final argument is that the refund and redeposit into the fund is analogous to an insurance policy loan.

Insurance policy loans are unique because the borrower assumes no personal liability to repay the principal or to pay interest on the amount borrowed. Such loans are based on the reserve value of the insurance policies involved. If either the principal or the interest is not repaid, it is merely deducted from the reserve value of the policy. [*Dean v. Commissioner*, 35 T.C. 1083, 1085 (1961).]

Interest paid on insurance policy loans has long been recognized as deductible under section 163. *Minnis v. Commissioner*, 71 T.C. 1049, 1054 (1979); *Salley v. Commissioner*, 55 T.C. 896, 903 (1971), affd. 464 F.2d 479 (5th Cir. 1972); *Kay v. Commissioner*, 44 T.C. 660, 672 (1965); *Dean v. Commissioner*, *supra* at 1083–1087. (But see sec. 264 which imposes limits on the deductibility of such interest.) The simple answer to petitioners' argument is that at the time petitioner received his refund, he had no obligation, either recourse or nonrecourse,

---

[5] The parties stipulated this pamphlet into the record as an exhibit.

[6] "[T]he interpretation of an agency charged with the administration of a statute is entitled to substantial deference." *Blum v. Bacon*, 457 U.S. 132, 141 (1982).

to repay this money. Further, his reemployment did not create either a recourse or nonrecourse liability to repay. There was simply no loan of the fund's money to petitioner. Accordingly, the insurance policy loan analogy is inapposite.

Since none of the interest paid by petitioner to the fund in 1977 constituted interest paid on an enforceable indebtedness, no deduction for such interest is allowable under section 163.

*Decision will be entered for the respondent.*