JAY R. GILL AND JEANNETTE H. GILL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gill v. Commissioner
Docket No. 2219-71
United States Tax Court
T.C. Memo 1975-3; 1975 Tax Ct. Memo LEXIS 369; 34 T.C.M. (CCH) 10; T.C.M. (RIA) 750003; January 8, 1975, Filed. *369 During 1965 and 1966 petitioner Jay R. Gill received numerous checks from the corporation of which he was president and 50 percent shareholder. Petitioners claim that these checks mostly represented reimbursements or advances for travel and entertainment expenses incurred on behalf of the corporation. Held: These expenses have not been adequately substantiated within the terms of sec. 274 and the accompanying regulations. During 1966 petitioner Jay R. Gill's compensation from the corporation was determined based upon checks payable to him. Held: Respondent's determination is upheld. For 1965 and 1966 petitioners claimed several miscellaneous itemized deductions: Held: Expenses incurred in connection with the operation of a rental automobile and the business use allocation determined. Held further: Four individual casualty losses denied since in two cases the losses did not exceed the $100 limitation, one was not adequately substantiated, and the fourth involved damage to property which petitioner did not own. Held further: Unreimbursed travel and entertainment expenses incurred on behalf of the corporation were not adequately substantiated within the terms of sec. 274 and the *370 accompanying regulations and petitioner Jay R. Gill conceded that some of the expenses had been reimbursed. Held further: The existence of a home office found to be "appropriate and helpful" to petitioner Jay R. Gill's trade or business. Stephen A. Bodzin, 60 T.C. 820 (1973). Expenses incurred and business use allocation determined. Respondent determined that petitioners were liable for the addition to tax under sec. 6651(a) for failure to file a tax return for 1966. Respondent also determined that petitioners were liable for additions to tax under secs. 6653(a) and 6654(a). Held: Petitioners did not file a tax return for 1966 and that penalty is properly assessed. Held further: The additions to tax under secs. 6653(a) and 6654(a) are also properly assessed. Jay R. Gill, pro se. Jon T. Flask, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: The respondent determined deficiencies in petitioners' income tax and additions thereto for the taxable years 1965 and 1966 as follows: Additions to Tax
Year
Deficiency
6651(a)
6653(a)
6654(a)
1965
$11,135.63
$556.78
1966
$16,146.16
$4,036.54
$807.31
$452.14
Many of the issues raised by the respondent have been settled *371 but several issues remain in controversy. The remaining issues include: (1) Whether amounts received by petitioner Jay R. Gill in 1965 and 1966 are to be characterized as additional compensation or expense reimbursements. (2) Whether amounts received by petitioner Jay R. Gill in 1965 are to be characterized as additional other income or expense reimbursements. (3) Whether petitioners are entitled to miscellaneous itemized deductions in 1965 and/or 1966 for (a) expenses associated with a rental automobile, (b) casualty losses, (c) unreimbursed business expenses, and (d) expenses associated with an office-in-home deduction. (4) Whether petitioners are liable for the additions to tax determined by respondent to be due under section 6651(a), Internal Revenue Code of 1954[1] for failure to file their 1966 tax return, under section 6653(a) for intentional disregard of the rules and regulations of the Internal Revenue Code and section 6654(a) for failure to pay estimated taxes. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts, together *372 with the exhibits attached thereto, are incorporated by this reference. Petitioners Jay R. Gill (hereinafter petitioner) and Jeannette H. Gill are husband and wife who resided in Sterling, Virginia at the time of filing their petition herein.Petitioners filed their joint income tax return for the taxable year ended December 31, 1965 with the district director, Jacksonville, Florida. By joint motion of the parties the location of the trial was changed from Washington, D.C. to Miami, Florida allowing the parties to have easier access to the relevant material. On July 1, 1965, Air Components Industries, Inc. (hereinafter Air Components) was incorporated pursuant to the laws of Florida. Air Components was engaged in the manufacture of machine parts made according to customer specifications. These parts were later installed in tanks, aircrafts, and missiles. The majority of the corporation's business was acquired through direct customer contact. Petitioner was instrumental in organizing Air Components.Petitioner owned 50 percent of the outstanding capital stock of Air Components and became its president. Petitioner was in charge of Air Components' operations with primary responsibility *373 for soliciting business. In this capacity petitioner made many sales trips and entertained customers. Warren A. Bishop (hereinafter Bishop) owned 25 percent of Air Components' outstanding capital stock and was the vice-president and secretary of the corporation. Bishop had no active management responsibilities, but he did sign various required documents and checks written on the corporation's payroll and regular checking accounts. The corporation's standard operating procedure was to have each check signed by two officers. Normally the check signers were petitioner and Bishop. When the checks were presented to Bishop they were generally completed, but on occasion Bishop signed blank checks or signed authorizations for the bank to honor checks that were issued with one signature. Bishop was never called upon to verify the travel and entertainment expenses incurred by petitioner. Petitioner's traveling and entertainment expenses were reimbursed by the corporation. Petitioner either submitted various receipts for reimbursement or received advances. Many of these receipts were credit card slips in petitioner's own name since the corporation did not have credit cards in its own *374 name. There were no corporate procedures limiting the nature or the amount of petitioner's expenses.Petitioner did not keep his own personal record of his activities to document the amount or the reason for his expenses. In February, 1968 petitioner left Air Components and the Miami area. At that time Bishop took control of some of the corporation's records and kept them in his personal business office until the trial date. The remainder of the corporate records were kept at the corporation's business location until business operations were terminated in December, 1968. Those records along with the corporation's remaining equipment were removed to a storage warehouse in Opa-Locka, Florida, which is not far from the Miami area. During a trial recess petitioner had the opportunity to examine these records.
Respondent's review of Air Components' records revealed numerous checks written in 1965 and 1966 payable to petitioner. These checks were classified as either being additional unreported commission income or reimbursements for expenses which were not properly substantiated. Two of them (numbers 5082 and 5138 in the respective amounts of $156.23 and $60.60) were issued for non *375 travel and entertainment purposes. Accordingly respondent increased petitioner's taxable income as follows: Commissions It is determined that you received commissions in the amount of $9,521.10 in 1965 and $34,117.25 during 1966 which were not reported. [2] Other Income It is determined that the payments of your personal expenses by your company, Air Components Industries, Incorporated, during the year 1965 in the amount of $11,783.39 and in the amount of $17,455.06 during 1966 [are] taxable as ordinary income. [3]
Petitioner on his 1965 and 1966 tax returns [4] claimed a miscellaneous itemized deduction for expenses incurred - rental payments, repairs, gasoline, simonizes and washings - in connection with an automobile rental. Petitioner used a 90 percent business allocation.During 1965 and 1966 petitioner rented two automobiles, one of which was used primarily for business purposes. This automobile *376 was used for various business trips throughout Florida and for commuting and other personal uses. Petitioner produced 10 rental payment checks for 1965 and one for 1966. The rental charge was approximately $206 per month. Respondent has conceded that the amounts claimed in 1965 and 1966 for gasoline were incurred. Petitioner produced no evidence to support the repair, simonize and washing elements of the claimed deduction. Respondent disallowed this deduction entirely and now asks this Court to limit the deduction to the amounts actually spent and to reduce the percentage allocation. On his 1965 tax return petitioner claimed two separate casualty *377 loss deductions. In each case the total loss claimed was less than the $100 limitation imposed by section 165(c) (3). On his 1966 tax return petitioner also claimed two separate casualty losses. The first loss involved the cost of repainting petitioner's residence to repair water damage caused by a tropical storm. The second claim involved a car accident that apparently was petitioner's fault. At the accident scene petitioner agreed to pay for the damage caused to the other car. For personal reasons petitioner did not wish to file a claim with his own insurance company. The car rental company repaired the damage to petitioner's car. Petitioner on his 1965 and 1966 tax returns deducted various travel and entertainment expenses which he claimed were not reimbursed by the corporation. All but three of these expenses, two checks to Melray Manufacturing Company for $119.39 and $8.05, and one check to Prentice-Hall, Inc. for $37.08, for both years were payments to various hotels, clubs, airlines, car rental agencies and restaurants. Petitioner has provided a summary for these expenses showing the date, payee of the check, amount, and a short explanation. Petitioner at trial conceded *378 that he received reimbursements for some of the expenses that he included in the 1966 deduction. On his 1966 tax return petitioner claimed a deduction for expenses incurred in operating a business office in his home. Included in this deduction were his mortgage payments (less interest), utilities, exterminating cost, and lawn care. Petitioner used a 25 percent business allocation.
Petitioner had an office at the corporation's business location which was a converted airplane hangar. In 1966 petitioner lived in a 3 bedroom house with a combination dining room - living room, a kitchen and 2 bathrooms. There was neither a basement nor a second story. Petitioner used the largest bedroom for an office. In this office he had a desk, drafting table, filing cabinets, a typewriter, and a microfilm machine to read blueprints. [5]
When a return is selected for audit the Internal Revenue Service agent first requests a copy of the return as filed. Acting on this request a search was made for petitioner's 1966 tax return and none was found. A blank return was then *379 prepared and given a document locator number (hereinafter DLN) so that the return would be in the computerized system. In conjunction with the preparation of the blank 1966 return a certificate of assessments and payments (hereinafter Form 4340) was also prepared. It is referenced to the DLN given to the blank return. It shows that no assessments or credits have been made with respect to the 1966 return. If, after these documents have been prepared, a tax return is filed by a taxpayer the computer system is constructed to alert the appropriate officials so that the two returns can be handled as one. Form 4340, prepared in November, 1973, was updated to the day before the trial and that check showed that no return had yet been received. At trial petitioner introduced a copy of his 1966 tax return. The return shows a credit of $1,942.80 for tax withheld from wages and $383.91 to be the remaining tax liability. A review of petitioner's personal checking account statements shows that a check for $383.91 did not pass through his account during the period in question.
Petitioner also introduced a copy of his wage and tax statement which shows that $1,942.80 was withheld from his wages. *380 Respondent has disallowed the 1965 itemized deductions as follows: It has not been established that the * * * amounts claimed * * * on your 1965 return were actually paid during the taxable year. Respondent did not allow any itemized deductions based on the blank return he prepared for 1966. The blank return included the commission and other income items and allowed only the standard deduction and the personal exemptions. OPINION The case at bar presents for our determination the issues of whether amounts received by petitioner are to be characterized as additional income or as expense reimbursements and whether certain expenses incurred are properly deductible within the terms of sections 162(a) and 274 and the regulations thereunder [6] *381 *382 and section 165. [7] Before entering into the substantive matters we should point out that our view of petitioner's credibility *383 has played an important part in our determinations. Much of petitioner's case is based on his unsupported testimony. Before trial petitioner had conceded that he was not entitled to the entire amount claimed for such itemized deductions as charitable contributions and taxes. Similar concessions were made at trial including the admission that several claimed unreimbursed business expenses had been reimbursed. During the taxable years 1965 and 1966 checks payable to petitioner were written on Air Components' payroll and regular checking accounts. Respondent has characterized these checks as representing additional taxable income. For 1965 these checks were determined to represent taxable income in addition to that reported on petitioner's 1965 tax return. Petitioner concedes that he received these checks but disputes that they represent additional taxable income. He claims that these checks were issued either as reimbursements for travel and entertainment expenses incurred on behalf of the corporation or as advance payments for expenses to be incurred. He further asserts that portions of the corporation's records had been lost or destroyed after he left the corporation and while *384 they were in Bishop's possession. In general, taxpayers are entitled to reduce their gross income for all the "expenses paid or incurred by the taxpayer, in connection with the performance by him of services as an employee, under a reimbursement or other expense allowance arrangement with his employer". Section 62(2) (A). To qualify, the taxpayer must show that the expenses would be allowed under section 162(a). However, entertainment and travel expenditures require greater substantiation than other section 162 deductions. Sections 274(a) (1) and 274(d). If petitioner's claim is to be upheld, he must document by adequate records the amount of the expense, the time and place of the activity, the business purpose of the expense, and the business relationship of the person entertained to the petitioner. Section 274(d). The requirements are amplified by Income Tax Regs., section 1.274-5, which was written under specific Congressional authority to carry out the purposes of section 274. Section 274(h). For 1965 the adjustment for commission income, (after concessions) $2,600, is comprised of five checks received by the petitioner. He claims these checks represent four expense *385 advances and one loan by the corporation to him. [8] The adjustment for other income, (after concessions) $11,206.58, is comprised of 26 checks received by the petitioner. He claims that all but two of these checks are for expense reimbursements or advances. The remaining two checks were reimbursements for miscellaneous items purchased by petitioner for use in the corporate business. Petitioner, as president of Air Components, was responsible for soliciting business. The corporation's business was of a nature that required much customer contact. Petitioner testified that he was continually entertaining prospective customers. However, petitioner spoke in generalities. He did not relate any of these expenses to any specific events nor did he produce the type of documentation contemplated by section 274 and the accompanying regulations to corroborate his own testimony. The record does include the testimony of one of petitioner's customers and the operator of a resort complex used by petitioner. Both men testified that petitioner did incur travel and entertainment expenses on behalf of Air Components. However *386 these men also spoke in generalities. We do not doubt that petitioner did incur expenses of this type, but the burden is on petitioner to substantiate them adequately. Petitioner claims his cause is hindered by the fact that, through no fault of his own, the relevant corporate records have been destroyed. He claims this happened after he left the Miami area and while the records were in Bishop's possession. Petitioner produced no evidence to support this claim and it was disputed by Bishop at the trial. If true, petitioner would be able to substantiate his expenses by a "reasonable reconstruction of his expenditures". Section 1.274-5(c) (5) Income Tax Regs. However, petitioner, as a 50 percent shareholder in Air Components, could be required to produce his own substantiation for his expenses even if he had previously made an adequate accounting for his employer. Section 1.274-5(e) (5) (ii). Petitioner also claims that despite repeated requests he has been denied access to the available corporate records. Petitioner did examine the files in Bishop's possession, and, despite the opportunity, petitioner did not examine the records in storage at Opa-Locka, Florida. The trial *387 was moved to Miami, Florida to allow the parties easier access to the relevant material. Upon review of the record we believe that none of the corporate records has been destroyed and that petitioner had an adequate opportunity to examine these records. Since petitioner has not been able to substantiate properly his travel and entertainment expenses, respondent's income adjustments must be upheld. However the adjustments should be reduced by the amount of check numbers 5082 and 5138 which are reimbursements for non travel and entertainment expenses and as such do not have to meet the substantiation requirements of section 274. For 1966 the adjustment for commission income, (after concessions) $32,322.52, is comprised of numerous checks payable to petitioner drawn on the payroll and regular checking accounts of Air Components. [9] *388 Petitioner makes no new claims with respect to respondent's determination and did not present any evidence attempting to show that these checks were either expense reimbursements or advances. What has been said with respect to the 1965 income determinations is applicable here and need not be repeated. During 1965 and 1966 petitioner rented two automobiles, one of which was used primarily for business. Petitioner is claiming a miscellaneous itemized deduction based on expenses incurred in the operation of this automobile. Respondent has conceded that the automobile was used in connection with petitioner's trade or business but wants to limit the deduction by allowing only those amounts that petitioner can substantiate and by reducing the business use allocation. For these years the deduction is based on expenses incurred for rental payments, repairs, gasoline, simonizes and washings. Petitioner has been able to substantiate only 10 and 1 monthly rental payment in 1965 and 1966, respectively, and the gasoline expenses for each year. The monthly rental payments were approximately $206 per month. From the record it appears that petitioner used the automobile during all of 1965 and 1966. We believe that petitioner made the claimed rental payments and that they should be part of the deduction. Petitioner has substantiated his gasoline expenses and they too should be part of the deduction. *389 Petitioner has substantiated neither the repair nor the simonize and washing expenses for 1965 or 1966. We do believe however that they are normal expenses related to the operation of an automobile. To these expenses we will apply the rationale as expressed in Cohan v. Commissioner, 39 F.2d 540 (2nd Cir. 1930) to allow petitioner one-half of the claimed amount as a deduction.
Petitioner's deduction for both years was based on a 90 percent business use allocation. Petitioner testified that the automobile was used to make various trips throughout Florida to pick up needed equipment and to deliver finished products.The car was also used for non-business purposes including commuting between his home and his business location. Section 262. Commissioner v. Flowers, 326 U.S. 465 (1946), Julio S. Mazzotta, 57 T.C. 427 (1971), affd. per curiam 465 F.2d 1399 (2nd Cir. 1972). Petitioner testified that he drove approximately 40,000 to 45,000 miles per year, but there was no allocation between business and non-business use. Based on the evidence before us, we believe a 75 percent business allocation to be appropriate. Cohan v. Commissioner, supra.
On his 1965 tax return, petitioner claimed *390 two separate casualty losses, each of which in total was less than $100. Section 165(c) (3) was amended to provide for a $100 limitation before a personal casualty loss could be deducted. This amendment applies to losses after December 31, 1963. Pub. L. 88-272 (Feb. 26, 1964). Accordingly petitioner's claimed losses must be denied since they are each below the $100 limitation and occurred in 1965. In 1966 petitioner claims two additional casualty losses. The first involves the expense incurred in repainting his house. Petitioner claims the repainting was necessary to repair extensive water damage caused by a tropical storm. Petitioner did produce the cancelled check to the painter, but he did not establish, with independent evidence to corroborate his own testimony, that a storm occurred or that the storm in fact caused the water damage. Accordingly this claim is denied. The second claimed casualty loss involves a car accident that was apparently petitioner's fault. At the accident scene petitioner offered to pay for the damage caused to the other car. Petitioner, for personal reasons, did not choose to file a claim with his own insurance company to recover the costs of *391 the damage. The car rental agency repaired the damage to petitioner's automobile. The record makes it clear, and the petitioner admits in brief that the amount was paid for the repair of an automobile owned by a third party.Under section 165(b) "the basis for determining the amount of the deduction for any loss shall be the adjusted basis provided in section 1011". Under sections 1011 and 1012 the basis of property is its cost. Since petitioner cannot have a basis in property he does not own, he cannot have a casualty loss deduction for the expenses incurred to repair that property. Accordingly this claim is denied. For 1965 and 1966 petitioner has claimed as a miscellaneous itemized deduction expenses he personally incurred on behalf of the corporation for which he was not reimbursed. As noted previously taxpayers are entitled to deductions for all the ordinary and necessary expenses incurred in carrying on a trade or business. Section 162(a). However all but three of the claimed expenses in 1965 and all of the claimed expenses in 1966 are travel and entertainment expenses which require greater substantiation before the deduction can be allowed. Section 274. Much of what *392 has been said with respect to the income adjustments is applicable here and need not be repeated. Furthermore petitioner has conceded at trial that some of the claimed expenses in 1966 have, in fact, been reimbursed by the corporation. Petitioner has not met the substantiation requirements of section 274, and the travel and entertainment expenses claimed as a deduction must be denied. Only those expenses in 1965, two checks to Melray Manufacturing Company and one to Prentice-Hall, Inc., which are not travel and entertainment expenses are deductible under section 162(a). For 1966 petitioner has claimed a miscellaneous itemized deduction for a home office deduction. The deduction was based on petitioner's mortgage payments (less interest) and other expenses including utilities, extermination, and lawn care. Petitioner used a 25 percent business allocation. Petitioner's home office was in one of his three bedrooms. It was fully equipped with office furniture and special equipment to read blueprints. Petitioner did have an office at the corporate location which was a converted airplane hangar. Respondent argues that these expenses were voluntarily incurred and as such cannot be *393 the basis for an ordinary and necessary business deduction. He points out that petitioner did have a corporate business office and that he was not required to have an office in his home. In our opinion, the respondent misconceives the nature of the "ordinary and necessary" standard contained in section 162. This Court has held that "[the] applicable test for judging the deductibility of home office expenses is whether * * * the maintenance of an office in the home is appropriate and helpful under all the circumstances". Stephen A. Bodzin, 60 T.C. 820, 825 (1973), Newi v. Commissioner, 432 F.2d 998 (2nd Cir. 1970), affirming a Memorandum Opinion of this Court. We believe that under all the circumstances petitioner has met this test, and consequently the expenses relating thereto are deductible ordinary and necessary business expenses. Nevertheless we are not in accord with petitioner's method of computing the amount of the expenses related to his home office. Petitioner has included the principal portion of his mortgage payments. These payments are capital in nature and cannot be the basis for an ordinary expense deduction. Petitioner's deduction should have included instead *394 the pro rata portion of the depreciation associated with his home office.Unfortunately petitioner has not provided any of the relevant information with which to calculate the depreciation expense. We also object, in this instance, to the inclusion of the lawn care expense. We believe this expense to be too personal in nature to be included with those "necessary" to maintain the home office as that term has been interpreted. Commissioner v. Tellier, 383 U.S. 687, 689 (1966). We believe the remaining expenses - utilities and extermination - to be appropriate and includible in the deduction. Besides the room used for the office, petitioner's residence has two bedrooms, a combination dining room - living room, a kitchen, and two baths.There is nothing in the record with respect to the sizes of these rooms except that the largest bedroom was converted into the office. Using our best judgment we believe a 20 percent business allocation of the allowable expenses to be appropriate. [10]Cohan v. Commissioner, supra.
At trial petitioner introduced a purported copy of *395 his 1966 tax return. It showed $383.91 to be the remaining tax liability. Petitioner claims that the original return along with a check was mailed to the Internal Revenue Service and, if it was not received, that it must have been lost in the mail. When respondent begins an audit a request is made for a copy of the tax return for the year in question. In this case that request revealed that the Internal Revenue Service had no record of a return being filed for 1966 by petitioner. Respondent's records were updated to the day before the trial with the same results. A review of petitioner's checking account on which the tax payment was allegedly written shows that no check for that amount passed through the account during the period in question. Petitioner also testified that during the period in question he was preoccupied with efforts directed at serving his failing business enterprise. We hold that petitioner did not file an income tax return for the year 1966. We must then decide whether petitioner has shown that his failure to file timely a tax return was "due to reasonable cause and not due to willful neglect", within the meaning of section 6651(a), so as to obviate the *396 imposition of the addition to tax prescribed therein. The burden of proof rests on petitioner. Electric & Neon, Inc., 56 T.C. 1324 (1971), affd. per curiam 496 F.2d 876 (5th Cir. 1974). We conclude that petitioner has not met this burden and that the penalty is properly assessed. Its amount must be adjusted appropriately to reflect settlements between the parties and our determinations herein. Respondent has also determined that for 1965 and 1966 petitioner is liable for the addition to tax imposed by section 6653(a). This penalty is imposed if "any part of any underpayment * * * is due to negligence or intentional disregard of rules and regulations * * *". The burden of proof is on the petitioner. Robert L. Bunnel, 50 T.C. 837, 843 (1968). Even assuming that petitioner kept adequate records, the evidence shows that petitioner has conceded he was not entitled to several of his claimed deductions for 1965. The same is true for 1966 even assuming that petitioner did file a tax return for that year. As noted above petitioner has conceded that several of his claimed unreimbursed business expenses were in fact reimbursed by the corporation. Accordingly we hold that petitioner *397 has failed to meet his burden of proof and that the penalty is properly imposed. Finally respondent has assessed the addition to tax imposed by section 6654(a) for failure to pay estimated taxes. Petitioner has introduced a copy of his Form W-2 which shows that $1,942.80 of tax had been withheld from his wages. Although respondent has shown that petitioner's copy of his 1966 tax return was not filed, he has not made a similar effort to show that the amount claimed withheld was not actually paid. The Form 4340 is only referenced to the blank return prepared by the Internal Revenue Service. Petitioner has introduced no evidence to show that the imposition of this penalty is erroneous. However, respondent has calculated the penalty without giving effect to the $1,942.80 income tax withheld. Petitioner is entitled to a credit for this amount.Section 6654(e) (2). One final note. Petitioner has filed a careful brief in which he puts his case in the best possible perspective. One can only regret that he did not take the same degree of care in maintaining his records in the years in issue. One can also regret that his testimony at the trial was not always as precise as one might *398 have wished.
Decision will be entered under Rule 155. Footnotes
1. All Code references are to the Internal Revenue Code of 1954 as amended unless otherwise indicated. ↩
2. After conferences between the parties, the amounts now in issue are $2,600 and $32,322.52 for 1965 and 1966, respectively. ↩
3. After conferences between the parties, the amount now in issue for 1965 is $11,206.58. The other income adjustment for 1966 was settled by the parties at trial. ↩
4. At trial petitioner introduced into evidence a purported copy of his 1966 tax return which he claims was filed with the Internal Revenue Service. The respondent has consistently denied this claim. This copy of petitioner's 1966 tax return was used throughout the trial as the basis for discussion of petitioner's income and deduction items for 1966. The term "1966 tax return", as used in the Findings of Fact, is not intended to give validity to petitioner's claim, but instead is used solely for purposes of clarity and convenience. ↩
5. During 1966 petitioner resided in two different homes. Information concerning only one of these homes was presented at trial. ↩
6. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including - * * * SEC. 274. DISALLOWANCE OF CERTAIN ENTERTAINMENT, ETC., EXPENSES. (a) Entertainment, Amusement, or Recreation. - (1) In General. - No deduction otherwise allowable under this chapter shall be allowed for any item - (A) Activity. - With respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, unless the taxpayer establishes that the item was directly related to, or, in the case of an item directly preceding or following a substantial and bona fide business discussion (including business meetings at a convention or otherwise), that such item was associated with, the active conduct of the taxpayer's trade or business, or * * * and such deduction shall in no event exceed the portion of such item directly related to, * * * the active conduct of the taxpayer's trade or business. * * * (d) Substantiation Required. - No deduction shall be allowed - (1) under section 162 or 212 for any traveling expense (including meals and lodging while away from home), (2) for any item with respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, * * * * * * unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation, * * * (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained, * * *. * * * (h) Regulatory Authority. - The secretary or his delegate shall prescribe such regulations as he may deem necessary to carry out the purposes of this section, including regulations prescribing whether subsection (a) or subsection (b) applies in cases where both such subsections would otherwise apply. ↩
7. SEC. 165 LOSSES.
(a) General Rule. - There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. * * * (c) Limitation on Losses of Individuals. - In the case of an individual, the deduction under subsection (a) shall be limited to - * * * (3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. A loss described in this paragraph shall be allowed only to the extent that the amount of loss to such individual arising from each casualty, or from each theft, exceeds $100. * * * ↩
8. Petitioner has produced no evidence to substantiate the alleged loan. ↩
9. Petitioner on his purported copy of his 1966 tax return shows $26,650 of wages and commission income. The amount in issue then is only $5,672.52. 10. There is also nothing in the record about the configuration of the other residence used in 1966. See footnote 5, supra. ↩