HORACE F. BATSON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Batson v. Commissioner
Docket No. 5738-79.
United States Tax Court
T.C. Memo 1982-78; 1982 Tax Ct. Memo LEXIS 670; 43 T.C.M. (CCH) 557; T.C.M. (RIA) 82078; February 16, 1982. Horace F. Batson, pro se. Isham B. Bradley, for the respondent. PARKER
MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge: Respondent determined deficiencies in petitioner's Federal income tax and additions to the tax under section 6653(a)[1] as follows: Deficiencies
Additions to the
Year
in Tax
Tax (Section 6653(a))
1976
$ 6,684.55
$ 413.07
1977
6,365.64
318.28
The issues in this case are primarily factual and involve substantiation of a multitude of deductions claimed by petitioner each year. Specifically, the following issues are before the Court for decision: *674 (1) Whether petitioner is entitled to rental expense and depreciation deductions in amounts greater than those allowed by respondent; (2) Whether petitioner is entitled to deductions for contributions to an individual retirement account under section 219(a) even though he was an active participant in his employer's qualified plan each year; (3) Whether petitioner is entitled to deduct amounts paid each year under an option-to-purchase agreement as interest under section 163(a); (4) Whether petitioner is entitled to deduct amounts spent each year for drinks for individual members of an American Legion Post and certain other alleged cash donations to various charitable organizations as charitable contributions under section 170(c); (5) Whether petitioner is entitled to business or casualty loss deductions with respect to an automobile, trees, and vandalism of property under section 165; (6) Whether petitioner is entitled to any further deductions or tax credits for political contributions under sections 41 or 218; and (7) Whether any part of any underpayment of tax for each year was due to negligence or intentional disregard of rules and regulations under section 6653(a). *675 Some of the facts have been stipulated and are so found. The stipulation of facts, as corrected, [2] and the exhibits attached thereto are incorporated herein by this reference. *676 At the time he filed his petition in this case, petitioner had a mailing address at 1480 Madison Street, Clarksville, Tennessee, which was mother's home. [3] For the taxable years 1976 and 1977, petitioner filed individual Federal income tax returns with the Internal Revenue Service Center, Memphis, Tennessee. On February 12, 1979, respondent mailed to petitioner a statutory notice of deficiency disallowing the following deductions: Item
1976
1977
Dependent - L.M. Batson
$ 750.00 Rental Expenses
10,071.79 $ 10,778.45
Capital Losses
1,000.00 1,000.00
Individual Retirement
Account
1,500.00 1,500.00
Itemized Deductions
7,721.81 Standard Deduction
(2,400.00)
Excess Itemized
Deductions
4,242.54
Petitioner has conceded that he is not entitled to the dependency exemption for his daughter or to head-of-household filing status and tax rates for 1976. Respondent has conceded that petitioner is entitled *677 to a capital loss deduction in the amount of $ 1,000 for each of the years 1976 and 1977. The statutory notice also made adjustments to the Schedule A itemized deductions for each year as follows: Item
1976
Claimed
Allowed
Disallowed
Medical
$ 150.00
$ 150.00
Taxes
2,079.00
$ 594.78
1,484.22
Interest
2,473.78
369.37
2,104.41
Contributions
1,441.40
1,441.40
Casualty or
Theft
1,427.24
1,427.24
Miscellaneous
150.39
150.39
Totals
$ 7,721.81
$ 964.15
$ 6,757.66
Item
1977
Claimed
Allowed
Disallowed
Medical
$ 150.00
$ 150.00
Taxes
2,156.33
$ 516.04
1,640.29
Interest
2,372.99
2,372.99
Contributions
1,286.45
1,286.45
Casualty or
Theft
349.94
349.94
Miscellaneous
126.83
126.83
Totals
$ 6,442.54
$ 516.04
$ 5,926.50
Because the itemized deductions allowed were less than the standard deduction for 1976 and the "zero bracket amount" for 1977, respondent allowed the standard deduction or zero bracket amount instead of itemized deductions. Petitioner claimed a deduction of $ 150 on his tax return for each year for medical insurance premiums. Petitioner now concedes *678 that he paid only $ 131.12 for 1976 and $ 155.15 for 1977 for such insurance and that he is not entitled to a deduction for any other medical expenses for either year. That results in a deduction of $ 65.56 for 1976 and $ 77.58 for 1977, since line 1 of Schedule A provides for "One-half (but not more than $ 150) of insurance premiums for medical care. * * *" See section 213(a)(2). The parties have now stipulated to certain amounts substantiated for taxes, interest, contributions, and miscellaneous itemized deductions. See footnote 2 above. Petitioner does not claim any additional deductions for taxes and miscellaneous itemized expenses. The Schedule A issues remaining relate to claimed deductions for additional interest and contributions and for casualty losses and political contributions for each year. I. RENTAL EXPENSES AND DEPRECIATION A. Depreciation Petitioner owned three duplexes on Warfield Drive in Nashville, Tennessee (Numbers 1930-1932, 1934-1936, and 1938-1940), two tracts of farm land with improvements located near Clarksville, Tennessee, and another property identified as "business use of residence" or "residence & garage." Petitioner claimed depreciation *679 on those properties in the total amount of $ 5,148.89 for each of the years 1976 and 1977. There is no evidence in the record showing petitioner's basis in any of these properties. There is no evidence in the record showing depreciation allowed or allowable on these rental properties for years prior to 1976. Neither is there any evidence in the record showing the salvage values of these rental properties. The apartment at 1940 Warfield Drive in Nashville has not been rented since 1970. During 1976 and 1977, petitioner had a telephone in that apartment, received some of his mail there, incurred utilities expenses for the unit, and used that address on his bank deposit slips. During that same period, petitioner's place of employment was in Nashville and many of his evening activities involved the American Legion Post on White Bridge Road in Nashville, about four miles from 1940 Warfield Drive. Petitioner's mother resided at 1480 Madison Street, Clarksville, Tennessee, about 40 miles from Nashville. Petitioner has not established that his residence was at his mother's home in Clarksville, Tennessee. [4] Petitioner has also failed to establish that his apartment at 1940 Warfield *680 Drive was rental property held for the production of income or used for business purposes. The Court finds that petitioner's residence during the years here involved was at 1940 Warfield Drive, Nashville, Tennessee. With respect to his property at 1930-1932 Warfield, petitioner listed the following information on his 1973 and 1974 tax returns: a date of acquisition of the property of July 16, 1955; a cost or basis of $ 14,749.32; and a depreciation method used of straight line with a 20-year life. On his 1975, 1976, and 1977 tax returns, petitioner listed the acquisition date for the same property as July 16, 1965; the cost or *681 basis as $ 14,749.32; and the depreciation method as straight line with a 20-year life. For each of the three years 1973-1975, petitioner's return listed the depreciation allowed or allowable on this property in prior years as $ 8,966.87, without adding in the depreciation taken in each immediately preceding year. We find that the property at 1930-1932 Warfield was acquired in 1955. The record does not establish the amount of depreciation allowed or allowable on that property during the 21-year period from 1955 to 1975. [5] Petitioner has failed to show that the property at 1930-1932 had not been fully depreciated prior to the years 1976 and 1977, the years before the Court. *682 The item on petitioner's depreciation schedule labeled "business use of residence" or "residence & garge" refers both to a garage located in back of unit 1938 Warfield Drive that petitioner used for storage and to unit 1940 Warfield Drive that petitioner used as a residence. Petitioner's depreciation schedule listed the following information pertaining to this tiem: a date of acquisition of January 1, 1970; a cost or other basis of $ 15,083.60; and a depreciation method of straight line with a life of 30 years. The basis listed for the item of $ 15,083.60 included the cost or other basis of units 1938-1940 (the $ 14,055.73 already listed on petitioner's depreciation schedule as a separate item and depreciated for those units) and $ 1,027.87 purportedly expended for certain repairs to the garage. Petitioner established that he spent $ 300 for a garage door for unit 1938 at some point in time. Absent evidence of any other expenditures in regard to the garage, we find that the $ 14,055.73 figure was duplicated and depreciated twice in petitioner's depreciation schedule. We cannot find that any amount is allowable as depreciation for the garage. Respondent agrees that petitioner *683 is entitled to depreciation as follows: 1976
1977
1930-1932 Warfield
1934-1936 Warfield
$ 632.51
$ 632.51
1938 Warfield
316.25
316.25
1940 Warfield
Route 1, Clarksville Highway
1,004.60
1,004.60
Farm Route 1, Clarksville
Highway
990.50
990.50
"Business use of residence"
or "Residence & Garage"
Total
$ 2,943.86
$ 2,943.86
There is no evidence in the record supporting any greater amounts of depreciation deductions. See footnote 5 above. B. Rental Expenses On Schedule E of his tax returns, petitioner deducted rental expenses identified mostly as "paint, hardw., & misc." in the amount of $ 4,922.90 for 1976 and $ 5,629.56 for 1977. Those amounts were disallowed for lack of substantiation. Petitioner now claims the following as rental expenses: Item
1976
1977
Miscellaneous Rental
Expenses
$ 2,510.59
$ 2,874.08
Travel
2,550.00
2,656.00
Parking
69.55
72.55
Stamps & Stationery
60.00
72.00
Totals
$ 5,190.14
$ 5,674.63
In support of the miscellaneous rental expenses of $ 2,510.59 for 1976 and $ 2,874.08 for 1977, petitioner presented certain canceled checks and receipts at the trial. Respondent agrees *684 that these documents add up to the amounts claimed by petitioner. However, respondent contends that the materials, other than a few specific exceptions, do not substantiate the rental expenses claimed by petitioner.[6] After examining these canceled checks and receipts in detail, respondent now agrees that these materials substantiated amounts of $ 570.17 for 1976 and $ 922.97 for 1977. The substantiated items included checks to Newspaper Printing Corp. for advertising, checks to Pleasant View Utilities, checks to certain insurance companies, and payments to payees such as Carter Hardware and Greybar Electric. With a very few exceptions, most of these canceled checks contain general notations like "rental p." or "rental prop." and do not identify the particular rental property for which the expense was incurred. Although it is unclear how respondent decided that these particular checks were allowable rental expenses, we accept the figures as concessions by respondent. *685 Most of the other canceled checks for which respondent has made no concession were paid to Southern Central Bell, Metro Water and Sewage, and Nashville Electric Service, and were incurred for telephone and utility expenses for the apartment at 1940 Warfield. That unit was not rental property held for production of income or property used for business purposes. Since we have found that that apartment was petitioner's residence, these expenditures were accordingly nondeductible personal expenses under section 262. Also included in the canceled checks proffered by petitioner as proof of his rental expenses are legal expenses of $ 350 in 1976 and $ 500 in 1977. Those amounts were paid in connection with several legal actions in which petitioner was involved, including his divorce, a property-line dispute, and preparation of certain quit claim deeds on his rental units. These legal fees were either nondeductible personal expenses under section 262 or nondeductible capital expenditures in defense of title or for acquisition of title to property under section 263. United States v. Gilmore,372 U.S. 39 (1963); Collins v. Commissioner,54 T.C. 1656, 1665-1666 (1970). *686 The numerous receipts submitted by petitioner bear hand-written notations briefly identifying the item and bearing the notations "rental p." or "rental prop." Respondent asserts that some of the receipts bear no date and questions whether the notations were made by petitioner contemporaneously with the expenditures. However, in the Court's view, there is a more serious flaw in that none of the receipts identifies the particular rental property involved. Many of these expenditures were made for petitioner's residence at 1940 Warfield Drive and were nondeductible personal expenses under section 262. We also note that petitioner deducted as part of his claimed rental expenses the filing fees and mailing costs of filing two prior tax cases in this Court. One of those earlier cases involved a question of alimony versus child support and the other one settled without a trial. While these expenses may be deductible as miscellaneous itemized expenses under section 212(3), there is no showing that they related to any rental properties. As indicated above, petitioner's record-keeping "system" was seriously deficient and petitioner improperly attempted to claim many of his personal *687 expenditures as business expenses relating to his rental properties. The Court cannot find that petitioner is entitled to rental expense deductions in any amount greater than the respective sums of $ 570.17 and $ 922.97 that respondent conceded for 1976 and 1977. We refuse to allow any greater amounts under the so-called Cohan rule, for any attempt to do so on this record would be sheer "unguided largesse." Williams v. United States,245 F. 2d 559, 560 (5th Cir. 1957). In Williams, the Court pointed out the basic prerequisite for application of the Cohan rule, stating (at 560): For the basic requirement is that there be sufficient evidence to satisfy the trier that at least the amount allowed in the estimate was in fact spent or incurred for the stated purpose. Until the trier has that assurance from the record, relief to the taxpayer would be unguided largesse. (Emphasis in original.) As part of petitioner's claimed rental expenses, there still remain the items of travel, parking, stamps, and stationery. Here again petitioner's records were seriously deficient or non-existent on these items. The figures for stamps and stationery were simply *688 estimates. Petitioner relied on so-called mileage books for his travel expenses, but the figures entered in those books were nothing more than estimates. As such, those books are not probative evidence and are not entitled to any weight. While petitioner may have incurred some travel expense in managing his rental properties, we conclude that it was far less than the amounts claimed by petitioner and was minimal. On this state of the record, the Court is unwilling to estimate any amount under the Cohan rule. II. INDIVIDUAL RETIREMENT ACCOUNT (SECTION 219(a)) During the years 1976 and 1977, petitioner was employed by E.I. DuPont de Nemours and Company. As an employee of that company, he was covered by a pension plan that met the requirements for qualification under section 401. On his tax returns for 1976 and 1977, petitioner deducted $ 1,500 each year for his contribution to an Individual Retirement Account (IRA). On each Form 5329, Return for Individual Retirement Savings Arrangement filled out by petitioner, the following question appeared: Were you during any part of the year an active participant in a qualified pension, profit-sharing or stock bonus plan, including *689 a qualified Keogh (HR 10) plan (see instructions), or were you covered under a section 403(b) annuity or custodial account or under a government retirement plan other than the Social Security or Railroad Retirement Acts? Petitioner answered "No" to this question each year. Petitioner also wrote on the Form 5329 that "$ 1500 was only payment I made during year 1976 [and 1977]." The DuPont plan was a non-contributory plan to which petitioner had made no contributions. Section 219(a) allows a deduction for an amount paid to an IRA subject to the limitations of section 219(b). However, section 219(b)(2)(A), as it read during the years involved in this case, provided that no deduction was allowed to an individual for the taxable year "if for any part of such year * * * he was an active participant" in a plan such as a plan described in section 401(a). Under the facts of this case, petitioner was an "active participant" in the qualified plan of the DuPont Company. Therefore, under the statute and the settled case law, he was not entitled to a deduction for a contribution to an IRA for *690 either year. [7]Johnson v. Commissioner,620 F. 2d 153 (7th Cir. 1980), affg. a Memorandum Opinion of this Court; Johnson v. Commissioner,661 F. 2d 53 (5th Cir. 1981), affg. 74 T.C. 1057 (1980); Guest v. Commissioner,72 T.C. 768 (1979); Orzechowski v. Commissioner,69 T.C. 750 (1978), affd. 592 F. 2d 677 (2d Cir. 1979). Petitioner nonetheless argues that, since he is divorced and since his daughter is no longer a minor, no amoung under the DuPont plan will pass to his estate upon his death and that he therefore should be permitted to deduct his contributions to an IRA. The law contains no such exception. The DuPont plan is a qualified plan under section 401. If petitioner is suggesting that the plan is somehow discriminatory and therefore unqualified as to him, the record does not support such an argument. Petitioner also relies upon Teamsters v. Daniels,439 U.S. 551 (1979). In that case, the Supreme *691 Court held that the Securities and Securities Exchange Acts do not apply to a non-contributory, compulsory pension plan, that the employee's interest in the pension fund does not constitute a "security," and that the plan, therefore, does not create an "investment contract." That case is completely inapposite and does not help petitioner. Under section 219(b)(2)(A), as it read during the years involved in this case, petitioner is not entitled to a deduction fro his contributions to an IRA. [8]
III. INTEREST DEDUCTIONS On January 2, 1967, petitioner entered into an agreement with Mr. and Mrs. Cecil McMahan for an option to purchase several acres of land and the mineral rights to that land for $ 500 per acre, payable at $ 1,000 per year for the first seven years beginning on January 1, 1969 and thereafter at *692 $ 2,500 per year beginning on January 1, 1976. Deferred payments were to bear interest at the rate of five percent per annum, payable yearly on the unpaid balance, with the first interest payment calculated on the year ending December 31, 1976. The agreement gave petitioner the right to exercise the option at any time prior to January 1, 1976, so long as he made the $ 1,000 payments required to keep the option active. The agreement also gave petitioner the right to withdraw at any time. Before execution of any deed, the property was to be surveyed to determine the correct acreage and the total consideration was to be figured on the basis of $ 500 per acre. On payment of full consideration in cash, the property was to be conveyed by general warranty deed. However, if the purchase price was paid by installment payments, the property was to be conveyed by installment deed with a lien retained as security. Later on in January of 1976, petitioner and Mr. and Mrs. McMahan executed an extension of the option to purchase the land. The extension agreement extended the option period to January 1, 1986, so long as petitioner made annual minimum payments of $ 1,842. That extension agreement *693 further provided: Should Batson wish to exercise this option, the first interest payment will be calculated on year ending 12 months from the January 1 date of the year option is exercised. Price per acre of land and rate of interest is [sic] to remain as called for in the existing option dated January 2, 1967. The said Batson and his assigns shall receive credit for partial payments made on the purchase of these 45.84 acres of land if he makes the required minimum payments, in the event this option extension is exercised, otherwise all partial payments belong to McMahan. (Underscoring in exhibit.) In 1976 and 1977, petitioner paid Mr. and Mrs. McMahan the minimum payment of $ 1,842 each year. Up to the time of the trial in this case, petitioner had no exercised the option to purchase the land. Petitioner claims that the $ 1,842 payments are deductible as interest paid, and characterizes the transaction as "a continuing qualification for the purchase of his [Mr. McMahan's] property in the year 1986, on a deferred-payment sales (sic)." Respondent argues that the amounts are not deductible as interest. We agree with respondent. *694 Section 163(a) allows a deduction for "all interest paid or accrued within the taxable year on indebtedness." (Emphasis added.) The term "interest" has been defined as "the amount which one has contracted to pay for the use of borrowed money" or "compensation for the use or forebearance of money." Deputy v. duPont,308 U.S. 488, 498 (1940); Old Colony R. Co. v. Commissioner,284 U.S. 552, 560 (1932). Moreover, the "indebtedness" upon which such a payment is made must be an existing, unconditional, and legally enforceable obligation for the payment of a principal sum. Autenreith v. Commissioner,115 F. 2d 856, 858 (3d Cir. 1940), affg. 41 B.T.A. 319 (1940); Gilman v. Commissioner,53 F. 2d 47, 50 (8th Cir. 1931), affg. 18 B.T.A. 1277 (1930); Howlett v. Commissioner,56 T.C. 951, 960 (1971); Williams v. Commissioner,47 T.C. 689, 692 (1967), affd. 409 F. 2d 1361 (6th Cir. 1968), cert. denied 394 U.S. 997 (1969). In this case, there was no fixed "indebtedness" and *695 no payment for the use or forebearance of money. The provision for "interest" in the option agreements referred to interest on any deferred payments after the exercise of the option. If petitioner is suggesting that some portion of each option payment was intended to be payment of interest, he simply has not established that to be the fact. Petitioner instead seeks to deduct as interest the entire $ 1,842 annual payment for the option. Petitioner's payment for an option to purchase land is not deductible as interest. Estate of Franklin v. Commissioner,64 T.C. 752, 762-763, 771 (1975); Howlett v. Commissioner,supra.[9]
Despite petitioner's characterization of this transaction as an installment sales purchase, he has not exercised the option. Moreover, when and if petitioner does exercise the option to purchase, the payments he has made will be credited to the purchase price and become part of his basis in the land. Petitioner argues that he is somehow being deprived of his right to deduct these payments. However, the mere fact that he has spent money does *696 not give rise to a tax deduction. The terms of the option agreement provide that any interest payments will not begin until the option is exercised. If petitioner chooses not to exercise the option, then petitioner will simply have paid for exactly what he got, an option. [10]
IV. CHARITABLE CONTRIBUTIONS On the issue of charitable contributions, petitioner's brief does not discuss the checks used to buy drinks to encourage other members of his American Legion Post to participate in certain volunteer work at the Veterans Administration Hospital in Nashville. We assume he has abandoned any such claim. Such expenditures clearly were gifts to individuals and not deductible contributions to qualified charitable organizations. [11]
*697 Petitioner also claims additional amounts of $ 173 for 1976 and $ 198 for 1977, as alleged cash contributions to various qualified charitable organizations. These amounts are in addition to the charitable contributions on which the parties have agreed. In support of these additional amounts, petitioner submitted two handwritten sheets containing amounts contributed and names of organizations. Petitioner testified that he made the entries on these sheets contemporaneously with the donations in each year. These additional amounts seem to be some of the same sums claimed on petitioner's tax returns as "other cash contributions." The "Big Brothers" item in 1976 may duplicate the charitable contribution already allowed in the parties' stipulation. Since we are not persuaded by petitioner's self-serving testimony and these sheets of paper, we hold that petitioner is not entitled to any additional amounts for charitable contributions. V. CASUALTY AND BUSINESS LOSSES (SECTION 165) Petitioner claimed casualty loss deductions of $ 1,427.24 ($ 1,527.24 less $ 100 floor) on Schedule A of his 1976 return and $ 349.94 ($ 449.94 less $ 100 floor) on Schedule A of his 1977 return. On *698 audit respondent disallowed these deductions in full. On brief petitioner claimed both casualty losses and business losses, reducing the total loss claimed for 1976 to $ 1,246.82 and increasing the total loss claimed for 1977 to $ 1,219.94. The $ 1,246.82 claimed for 1976 includes $ 1,170 for the alleged loss of trees on one of petitioner's rental properties and $ 176.82, less the $ 100 statutory floor, for an alleged casualty to the transmission of his automobile. The $ 1,219.94 claimed for 1977 includes $ 349.94 ($ 449.94 less $ 100 floor) for alleged collision damage to the same automobile and $ 870 for alleged vandalism to one of petitioner's rental properties. The tree loss involved trees on or adjacent to one of petitioner's rental properties. The next-door neighbors cut down the trees to create a parking lot. There was a dispute between petitioner and those neighbors as to who owned the land on which the trees were located. That property-line dispute resulted in litigation that was not resolved until 1977 or 1978, and the outcome of that litigation is not established by the record. The record in this case does not establish whether petitioner owned the land on which *699 the trees were located. Petitioner testified that he was given a lifetime use of the area as a result of an adverse possession lawsuit. However, the record does not show when that lawsuit was concluded nor the nature of any property rights the local court determined that petitioner possessed. A taxpayer has the burden of proof and must establish that he is entitled to the deductions claimed. New Colonial Ice Co. v. Helvering,292 U.S. 435, 440 (1934); Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. And a taxpayer cannot deduct a casualty loss for property he does not own. Draper v. Commissioner,15 T.C. 135 (1950). [12] However, loss deductions can be allowed for damage to property rights that are something less than the complete estate or the full bundle of ownership rights. Cox v. United States,537 F. 2d 1066 (9th Cir. 1976) [intangible property right in oil in place]; Collins v. United States,193 F. Supp. 602 (D. Mass. 1961), reversed *700 on another issue, 300 F. 2d 821 (1st Cir. 1962) [contract to purchase land]; Steinert v. Commissioner,33 T.C. 447 (1959) [life estate]; Bonney v. Commissioner,247 F. 2d 237 (2d Cir. 1957), affg. 24 T.C. 199 [leasehold interest]. On the record in this case, we cannot find that petitioner owned the trees that were cut down. Moreover, we cannot find that he had any other property right in the trees that might sustain a loss deduction for their removal. Petitioner has not carried his burden of proof. With respect to the damage to the transmission of his 1968 Pontiac, petitioner testified, that "Well, I was not conscious that I had run over anything that would do this kind of damage, but evidently I hit a rock." Petitioner speculated that while driving down a country road in early January 1976, he hit a rock that collapsed his transmission coolant line and caused the transmission to overheat and suffer damage *701 later. Petitioner did not observe anything wrong with his car after the got off the country road, and he began to speculate about what might have happened only after he suffered a transmission failure several days later. The fact that petitioner is a licensed professional engineer may give some weight to his opinion on what might have happened. However, the Court is not persuaded that petitioner's scenario actually did happen. The term "casualty" has been defined to mean "an accident, a mishap, some sudden invasion by a hostile agency; it excludes the progressive deterioration of property through a steadily operating cause." Fay v. Helvering,120 F. 2d 253 (2d Cir. 1941), affg. 42 B.T.A. 206 (1940); Newton v. Commissioner,57 T.C. 245, 248 (1971). Petitioner has not sustained his burden of proof to establish that the damage to his transmission was the result of a casualty rather than just progressive deterioration. The $ 449.94 casualty loss claimed for 1977 also involved petitioner's 1968 Pontiac automobile. Petitioner testified that an uninsured motorist backed into the car and damaged it.Petitioner submitted an estimate *702 for the damage, but the record does not establish whether or not the damage was ever repaired. While the cost of repairs can be an acceptable method of proving the amount of a casualty loss, the rapairs must actually be made and the expenditures actually incurred. Lamphere v. Commissioner,70 T.C. 391 (1978); Farber v. Commissioner,57 T.C. 714, 719 (1972); sec. 1.165-7(a)(2)(ii), Income Tax Regs. Petitioner has not sustained his burden of proof. Although not claimed on his 1977 return, petitioner now claims a business loss in the amount of $ 870 for alleged vandalism to his rental house in Cheatham County, Tennessee. Petitioner submitted to the Court a local tax assessment form that purportedly showed a reduction of $ 870 in the assessed value of that property, allegedly as a result of vandalism. There is evidence in the record that for the taxable year 1974 petitioner claimed this same loss for vandalism in the amount of $ 870, and that the deduction was allowed for that year. Losses resulting from acts of vandalism can *703 be deducted. United States v. Lattimore,353 F. 2d 379 (9th Cir. 1965); Davis v. Commissioner,34 T.C. 586 (1960). However, on the record in this case, petitioner has not persuaded the Court that he suffered a vandalism loss in the year 1977. VI. POLITICAL CONTRIBUTIONS (SECTIONS 41 AND 218) In 1976 petitioner contributed $ 10 in cash to the political campaign of the late Clifford Allen.That was the only cash political contribution made by petitioner in 1976 or 1977. The parties have stipulated that petitioner is entitled to a "tax credit for cash contributions to political candicates in the amount of $ 5.00 per the year 1976." The Court assumes that the $ 5.00 refers to the amount of the tax credit and not to the amount of the cash contributions, since the $ 10 cash contribution in 1976 would result in a $ 5.00 tax credit. Petitioner claimed a $ 50 deduction on his 1976 return and still claims $ 45, without distinguishing between a deduction, on the one hand, and a tax credit, on the other hand. For 1977 petitioner claimed a "tax credit" of $ 25 on his tax return for political contributions that petitoner now erroenously characterizes *704 as a $ 50 deduction. All of the claimed credit or deduction for 1977 is in dispute. Petitioner claims as political contributions certain travel expenses he incurred in connection with the political campaign of the late Clifford Allen in 1976 and 1977.
During the years before the Court, section 41 allowed a tax credit for political contributions and section 218 allowed a deduction for political contributions, but a taxpayer could not claim both. Section 41(a) allowed a tax credit equal to one-half of all "political contributions" paid during the year, subject to the limitations of subsection (b). Subsection (b)(1) limited the tax credit to an amount not to exceed $ 25 ($ 50 in the case of a joint return). Section 218(a) allowed a deduction for "any political contribution (as defined in section 41(c)(1))," but such deduction was limited to $ 100 ($ 200 in the case of a joint return).The deduction of course was not available if the taxpayer had elected to take the tax credit under section 41. Section 218(c). However, for purposes of either the tax credit under section 41 or the deduction *705 under section 218, the term "political contribution" was defined in section 41(c)(1) as "a contribution or gift of money" to candidates or certain committees or organizations. (Emphasis added.) See also section 1.41-1(g), Income Tax Regs.
The language of both the statutory provisions and the regulations clearly states that political contributions must be contributions or gifts of "money," and that gifts of property or services do not qualify. Any travel expenses incurred by petitioner, even if properly verified, [13] do not qualify for either a tax credit under section 41 or a deduction under section 218. *706 VII. NEGLIGENCE ADDITION (SECTION 6653(a)) Respondent determined additions to the tax in the amounts of $ 413.07 and $ 318.28 for the years 1976 and 1977, respectively. The burden is upon petitioner to establish that any underpayment of his taxes was not due to negligence or intentional disregard of rules and regulations within the meaning of section 6653(a). Vaira v. Commissioner,444 F. 2d 770, 777 (3d Cir. 1971), affg. on this point 52 T.C. 986 (1969); Bixby v. Commissioner,58 T.C. 757, 791-792 (1972). Petitioner has not sustained his burden in that regard. Petitioner's records were inadequate or in some instances nonexistent. His tax returns were negligently prepared, particularly in regard to his rental expenses and depreciation deductions.We sustain respondent's imposition of the negligence addition. To reflect the concessions and the above holdings, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years involved in this case, unless otherwise indicated.↩
2. After briefs were filed, respondent filed a motion to correct errors in certain total figures in the stipulation, including taxes for 1977, interest for 1976, charitable contributions for each year, and miscellaneous for 1977. In each instance, it was obvious that the specific items agreed to in each category did not add up to the totals listed in the stipulation. Rather astonishingly, petitioner objected to the corrections. Except for the contributions item, petitioner gave as his only reason that, I wish to ride with what we agreed to." The Court would normally correct this type of arithmetical error on its own motion. As to the contributions item, petitioner merely asserted that the items for Veterans Hospital should have been $ 510.75 for 1976 and $ 523 for 1977. No other explanation was proffered. The Court notes that the difference between the Veterans Hospital items in the stipulation ($ 90 and $ 148, respectively) and those now claimed by petitioner ($ 510.75 and $ 523, respectively) just happen to equal the difference between the original totals and the correct totals. There is no basis in the record to support the increased figures belatedly claimed by petitioner. The Court has therefore overruled petitioner's objections as frivolous and without merit and has made the arithmetical corrections requested by respondent.↩
3. There is a dispute in this case as to where petitioner resided. However, since his residence was either Clarksville, Tennessee, or Nashville, Tennessee, this dispute does not affect venue for purposes of any appeal. Section 7482(b).↩
4. Petitioner's reply brief sets out factual assertions that are not part of the trial record and are not in evidence. These ex parte statements cannot be considered by the Court. Rule 143(b), Tax Court Rules of Practice and Procedure; Evans v. Commissioner,48 T.C. 704, 709 (1967), affd. per curiam 413 F. 2d 1047 (9th Cir. 1969); West 80th Street Garage Co., Inc. v. Commissioner,12 B.T.A. 798, 800↩ (1928).
5. Petitioner presented a handwritten document that he prepared the night before the trial that purported to show depreciation based on a 30-year life from 1955 to 1969 and on a 20-year life from 1970 to 1977.There is no evidence to support these figures, and petitioner's self-serving testimony does not lend any support to these figures. In his reply brief, petitioner presents additional factual statements which go beyond the record and which cannot be considered by the Court. Rule 143(b), Tax Court Rules of Practice and Procedure.↩ Respondent has accepted some of the figures used by petitioner, correcting an arithmetical error in regard to the "Route 1, Clarksville Highway" property and adjusting for salvage value for each property.Petitioner had not taken salvage into consideration. The Court accepts respondent's figures as partial concessions rather than disallowing all depreciation deductions on the rental properties.
6. In his post-trial briefs, petitioner relies on respondent's exhibit P as proving his claim. That exhibit merely tabulates these checks and receipts by the month and by the year. Petitioner, in something more reminiscent of an audit than a trial, presented 24 small white envelopes containing canceled checks and receipts for each month of the two-year period. Respondent's counsel prepared a schedule tabulating the materials for each month and the totals for each year, which was received as respondent's exhibit P.↩
7. The Court notes that respondent did not impose the six percent excise tax on petitioner's "excess contributions" under section 4973 for either year.↩
8. In the Economic Recovery Tax Act of 1981, Congress has changed the law with respect to IRAs and has provided that any individual, whether or not he is an active participant in a qualified plan, can deduct contributions to an IRA, for taxable years beginning after December 31, 1981. Sec. 311 of the Economic Recovery Tax Act of 1981, Pub. L. 97-34, 95 Stat. 274, 283.↩
9. See also Young v. Commissioner,T.C. Memo. 1978-19↩.
10. The tax consequences of any loss attributable to failure to exercise an option would appear to be governed by section 1234. However, the Court will not speculate as to what may happen under the tax law in effect when petitioner ultimately exercises or fails to exercise the option.↩
11. Petitioner has been allowed as a charitable contribution certain expenses he incurred in connection with his own volunteer service to the Veterans Administration Hospital.↩
12. See also Miller v. Commissioner,T.C. Memo. 1975-110; Gill v. Commissioner,T.C. Memo. 1975-3; Loewenstein v. Commissioner,T.C. Memo. 1968-227↩.
13. Section 41(b)(3) and section 218(b)(2) require verification of amounts and expressly provide that the tax credit or deduction is to be allowed "only if such contribution is verified in such manner as the Secretary shall prescribe by regulations." This Court has strictly enforced that verification requirement. See Habeeb v. Commissioner,T.C Memo. 1976-259; Beatty v. Commissioner,T.C. Memo. 1980-196; Rothfeld v. Commissioner,T.C. Memo. 1980-362; Fling v. Commissioner,T.C. Memo. 1981-14↩. Petitioner has not adequately substantiated or verified the amounts claimed as political contributions.